**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

            v.

LEE CHAPMAN,
              *Defendant-Appellant.*

No. 07-50000

D.C. No.
CR-05-01516-JAK

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
December 5, 2007—Pasadena, California

Filed June 23, 2008

Before: David R. Thompson and Kim McLane Wardlaw,
Circuit Judges, and Edward C. Reed, Jr.,* District Judge.

Opinion by Judge Wardlaw

---

*The Honorable Edward C. Reed, Jr., Senior United States District
Judge for the District of Nevada, sitting by designation.

7215

**COUNSEL**

Steven L. Barth, Federal Defenders of San Diego, Inc., Sand Diego, California, for the defendant-appellant.

Karen P. Hewitt, Bruce R. Castetter, Christina M. McCall, United States Attorneys, San Diego, California, for the plaintiff-appellee.

**OPINION**

WARDLAW, Circuit Judge:

Lee Chapman appeals his misdemeanor conviction under 18 U.S.C. § 111(a) for forcibly resisting, opposing, impeding, and interfering with a federal officer engaged in official duties. Because § 111(a) allows misdemeanor convictions only where the acts constitute simple assault, and because Chapman's nonviolent civil disobedience did not constitute a

simple assault, we reverse and vacate the judgment of conviction.

## I.  BACKGROUND

On August 14, 2006, two contract security officers from the Department of Homeland Security at the San Ysidro Port of Entry approached Chapman to investigate complaints that he had been cutting in line at the pedestrian area leading to the border checkpoint. After a brief interaction, the three individuals began walking toward the Customs and Border Protection Inspection area.[1] As they approached the inspection area, the officers signaled to Officer Buchanan of the Federal Protective Services to stop Chapman, and he did. Officer Buchanan asked Chapman to move to the side of the walkway away from the other pedestrians, but Chapman refused. He then tried to physically escort Chapman to the side of the walkway, but Chapman "tensed up." At that point, Officer Buchanan placed Chapman under arrest and tried to pull Chapman's hand behind his back. Chapman took a rigid stance, and Officer Buchanan was not strong enough to move Chapman's arm. In the process, Officer Buchanan slipped and fell to the floor. He then stood up and told Chapman to lie down on the ground, but Chapman remained motionless and maintained his strong stance. In response, Officer Buchanan struck Chapman in the thigh with his tactical baton. Chapman, unfazed and upset at what he perceived as an unjustified attack, told Officer Buchanan to "hit [him] again." Officer Buchanan then struck Chapman a second time with the baton, to no effect. Finally, Officer Buchanan sprayed pepper spray directly into Chapman's eyes; once the spray had penetrated,

---

[1]Chapman and the officers testified to differing versions of the encounter. Chapman alleges that the officers never mentioned the line-cutting accusations against him and were overtly hostile, so he proceeded to the inspection area to report their inappropriate behavior. In contrast, the officers assert that Chapman acknowledged the complaints but refused to return to the back of the line, so they escorted him to the inspection area for further questioning.

Officer Buchanan and another officer moved in and placed Chapman in handcuffs. At no point in the encounter did Chapman attempt to strike, nor did he use any profanity against any officer.

Chapman was arrested and charged in a criminal complaint alleging that he "did knowingly and intentionally forcibly resist, oppose, impede, and interfere with" a federal officer in violation of 18 U.S.C. § 111(a)(1). The government filed a bill of particulars, which described the necessary elements as follows: (1) "the defendant forcibly resisted or impeded, etc."; (2) "Officer Buchanan was a federal employee engaged in official duties"; and (3) "the defendant acted wilfully and knowingly when he committed the prohibited acts." The government alleged these elements were satisfied when Chapman "refused to follow Officer Buchanan's orders," "forcibly resisted" the officer's "attempt[s] to place Chapman in hand-cuffs," "continued to struggle" with the officers, and, finally, "actively resisted being handcuffed . . . [e]ven after being sprayed with pepper spray."

Chapman waived his right to trial by jury and testified at the bench trial, as did each of the officers involved in the encounter. The district court, relying on our decision in *United States v. Sommerstedt*, 752 F.2d 1494, 1496-97 (9th Cir. 1985), concluded that to prove a violation of 18 U.S.C. § 111(a)(1), "the government need only show that any level of force was used against a federal officer." It held that "[t]hrough his affirmative and consistent refusal to obey Officer Buchanan's requests and commands to move to the side as well as to get to the ground, Defendant acted knowingly and willfully while resisting, interfering, opposing and imped-ing the action of Officer Buchanan." Finding Chapman guilty of the misdemeanor offense, the court sentenced him to time served, and denied his motion for judgment of acquittal based on insufficiency of the evidence. Chapman timely appeals.[2]

---

[2]Chapman also appeals the district court's denial of his discovery request for "all manuals, memoranda or training materials concerning pro-

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 18 U.S.C. § 1291. We review de novo the denial of the motion for judgment of acquittal based on insufficiency of the evidence. *United States v. Atalig*, 502 F.3d 1063, 1066 (9th Cir. 2007). We "must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

## III.  ANALYSIS

We agree with Chapman that, viewing the evidence in the light most favorable to the government, no rational trier of fact could find that Chapman's conduct rises to the level of a criminal offense under 18 U.S.C. § 111. Section 111 provides:

(a)  In general.—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [designated federal officer or employee] while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a [designated federal officer or employee] on account of the performance of official duties during such person's term of service,

cedure, practices, regulations or official duties of the U.S. Customs and Border Patrol, GSA Security, Federal Police and the operations of the San Ysidro port of entry." Because we reverse Chapman's conviction on the basis of insufficient evidence, we do not consider Chapman's discovery claim.

shall, where the acts in violation of this sec-
tion constitute only simple assault, be fined
under this title or imprisoned not more than
one year, or both, and in all other cases, be
fined under this title or imprisoned not
more than 8 years, or both.

(b)   Enhanced penalty.—Whoever, in the commis-
sion of any acts described in subsection (a), uses a
deadly or dangerous weapon (including a weapon
intended to cause death or danger but that fails to do
so by reason of a defective component) or inflicts
bodily injury, shall be fined under this title or impris-
oned not more than 20 years, or both.

*Id.*[3]

**[1]** In *Jones v. United States*, 526 U.S. 227, 252 (1999), the
Supreme Court held that where a statute sets out separate pun-
ishment clauses, each adding further elements to the crime,
the punishment clauses constitute separate and distinct crimi-
nal offenses, rather than one offense with different punish-
ments. Relying on *Jones*, several of our sister circuits have
held that § 111 creates three distinct offenses, one misdemea-
nor and two felonies. *See United States v. Hathaway*, 318
F.3d 1001, 1007 (10th Cir. 2003); *United States v. Yates*, 304
F.3d 818, 821-22 (8th Cir. 2002); *United States v. McCulli-
gan*, 256 F.3d 97, 102 (3d Cir. 2001); *United States v. Che-
staro*, 197 F.3d 600, 608 (2d Cir. 1999); *United States v.
Nuñez*, 180 F.3d 227, 233 (5th Cir. 1999). We agree that this
formulation of the statute is required by *Jones*. Violations of
the "simple assault" provision constitute misdemeanors. 18

---

[3]Congress recently amended § 111(a) as a part of the Court Security
Improvement Act of 2007, effective January 7, 2008. *See* Pub. L. No. 110-
177, § 208(b), 121 Stat. 2538 (2008). The district court properly applied
the version of § 111(a) in effect at the time the conduct underlying the
offense of conviction occurred, as do we.

U.S.C. § 3559(a)(6). Violations of the "all other cases" or dangerous weapon or bodily harm provisions constitute felonies. *Id.* §§ 3559(a)(3), (4).

**[2]** Section 111(a) is inartfully drafted, leaving two major ambiguities. First, it distinguishes between misdemeanor and felony conduct by use of the term "simple assault," which is not defined in the statute or in any other federal statute. Second, § 111(a)(1) appears to prohibit six different types of actions, only one of which is "assault," but then it draws the line between misdemeanors and felonies solely by referencing the crime of assault. Therefore, it is unclear whether the statute prohibits acts of resistance, opposition, impediment, intimidation, or interference that do not also involve an underlying assault.

Courts of appeals have focused on the first ambiguity— § 111(a)'s use of the term "simple assault" as the means to distinguish between misdemeanor and felony violations of the statute. For example, in *Chestaro*, the Second Circuit considered a challenge to § 111(a) on the ground that it was unconstitutionally vague because it did not clearly distinguish between misdemeanor and felony conduct. 197 F.3d at 604-05. The court acknowledged that "simple assault" was not explicitly defined, but adopted the common law understanding that "simple assault" was assault that did not involve physical contact. *Id.* at 605-06. Accordingly, the Second Circuit concluded that § 111(a) criminalized three distinct categories of conduct: (1) assaults that do not involve physical contact (punishable up to one year), (2) assaults that do involve physical contact (punishable up to eight years), and (3) assaults that involve a deadly or dangerous weapon or bodily injury (punishable by up to twenty years). *Id.* at 606; *see also McCulligan*, 256 F.3d at 102 (adopting the *Chestaro* statutory construction of § 111(a)); *United States v. Ramirez*, 233 F.3d 318, 321 (5th Cir. 2000) (same), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002). Therefore, under this formulation, someone who punched an

arresting officer would be guilty of a felony, but someone who threw a punch and missed would be guilty of only a misdemeanor.

Other circuits have drawn different lines between misdemeanor and felony conduct. For example, the Tenth Circuit in *Hathaway* held that proof of actual physical contact, while sufficient, is not necessary to sustain a conviction of non-simple assault under § 111(a). 318 F.3d at 1008-09; *see also Yates*, 304 F.3d at 822. Rather, an assault, coupled with the presence of physical contact *or* a similar aggravating factor, such as the intent to commit murder or a serious felony, is not simple. *See Hathaway*, 318 F.3d at 1009; *Yates*, 304 F.3d at 823. Congress's recent amendment to the statute adopted this approach. Under § 111(a), as amended, assaults are treated as felonies if they "involve physical contact . . . or the intent to commit another felony." *See* Pub. L. No. 110-177.

**[3]** One thing is consistent about each of these interpretations: In resolving the statute's first ambiguity, it also resolves the second. Specifically, in drawing the line between misdemeanor and felony conduct, both the Second Circuit, *Chestaro*, and the Tenth Circuit, *Hathaway*, although construing the statutory language differently, have adopted a construction that leaves no room for a conviction that does not involve at least some form of assault. Therefore, under each of these approaches, while a defendant could be charged with resisting, opposing, impeding, intimidating, or interfering, he could not be convicted unless his conduct *also* amounted to an assault.

**[4]** Chapman was not charged with assaulting Officer Buchanan, nor could he have been. In response to the officer's attacks, Chapman did not threaten or attempt to injure the officers in any way—he merely stood still, "tensing" his body, saying, albeit possibly with some intensity, "hit me again." To constitute an assault, an action must be "either a willful attempt to inflict injury upon the person of another, or

. . . a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976). Chapman's conduct does not meet either definition. Therefore, while his actions might have constituted "resistance," "opposition," or an "impediment," to the officers' desire to move him, they did not constitute "assault," and so Chapman could not have been convicted under either the Second or Tenth Circuits' interpretation of § 111(a).

In response, the government argues that requiring an "assault" in all § 111(a) convictions renders the remaining verbs in the statute (resists, opposes, impedes, intimidates, and interferes) functionally meaningless. It argues, therefore, that we must allow convictions for non-assaultive conduct as long as the conduct satisfies one of these other verbs.

However, for the statute to be constitutional, it must draw a line between that conduct which constitutes a misdemeanor offense and that which constitutes a felony. *See United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."). Moreover, this line must be sufficiently clear that a reasonable person would be put on notice of the potential criminality of his conduct. *See id.* ("A criminal statute is . . . invalid if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.") (internal quotation marks omitted); *see also McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.) ("[A] fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed."). In support of its argument that non-assaultive conduct alone can support a conviction under § 111(a), the government makes no attempt to explain how we would draw the line that the statute itself makes between misdemeanors and felonies in those cases.

If we accepted the government's argument that mere passive resistance is sufficient for a conviction under § 111(a), the most straightforward reading of the statute would require us to treat *all* such cases as felonies. Such non-assaultive conduct would, by definition, not amount to "simple assault" and therefore could not qualify as a misdemeanor, triggering the "in all other cases" felony clause. This reading ineluctably leads to absurdity. A protester who resisted arrest by merely standing still would be guilty of a felony punishable by up to eight years imprisonment, whereas an individual who attempted to punch an arresting officer could be guilty only of a misdemeanor, so long as the attempted physical contact was unsuccessful. Moreover, as the Seventh Circuit pointed out when rejecting this very argument, in cases of simple assault, the government would have the perverse incentive to omit "assault" from the indictment and charge the defendant only with "resistance" or "opposition," thereby elevating the criminal conduct from a misdemeanor to a felony. *United States v. Vallery*, 437 F.3d 626, 633 (7th Cir. 2006). Like the Seventh Circuit, we cannot conclude that Congress intended such an absurd result.

At the other extreme, if non-assaultive conduct could support a conviction under § 111(a), we might desire an interpretation that such conduct be treated consistently as a *misdemeanor*, treating only aggravated assaults as felonies. Although this interpretation might make sense from a policy perspective, it cannot be squared with the statute's text. The statutory language clearly limits the category of "misdemeanors" to cases of "simple assault" and then categorizes "all other cases" felonies. Because the statute is not ambiguous as to the demarcation between misdemeanors and felonies, we cannot construe it in any other way, even if we so desired. *See United States v. Watkins*, 278 F.3d 961, 965 (9th Cir. 2002) ("[A] court should not read words into a statute that are not there."); *Stanton Rd. Assoc. v. Lohrey Enters.*, 984 F.2d 1015, 1020 (9th Cir. 1993) (noting that the Supreme Court has

instructed this Court that we lack the power to "read into the statute words not explicitly inserted by Congress").

If mere "resistance" is sufficient for a § 111(a) conviction, we would have to find a meaningful way to distinguish between those cases of "resistance" that would be punishable as misdemeanors and those that would be punishable as felonies. The Seventh Circuit suggested such a possibility in *Vallery*. There, the defendant pushed an officer in an attempt to evade arrest, and was charged with "assault[ing], resist[ing], imped[ing], and interfer[ing]" with the officer. *Vallery*, 437 F.3d at 629. The jury convicted Vallery, but only as to resisting, impeding, and interfering, not as to the assault. *Id.* The judge sentenced the offense as a misdemeanor. *Id.* Vallery did not appeal his conviction, but the government did, arguing that under the statute's plain text, the offense had to be considered a felony. *Id.* at 630. As noted above, the Seventh Circuit rejected this argument. *Id.* at 633. Unfortunately, the *Vallery* opinion is hardly a model of clarity. The Court repeatedly cites *Chestaro*'s formulation of § 111, which explicitly requires an assault for both misdemeanor and felony convictions under § 111(a). *Id.* at 630, 631. On the other hand, in other parts of opinion, the Court seems to suggest that it would allow convictions based on non-assaultive conduct, and it would apply the same "physical contact" rule in those cases as in cases involving an assault. *Id.* at 631, 633, 634.

To the extent that dicta in *Vallery* suggests that mere resistance is punishable under § 111(a) and that the physical contact rule would distinguish misdemeanors and felonies in those cases, we would disagree. If Congress had intended to prohibit both assaultive and non-assaultive conduct and intended to distinguish between misdemeanors and felonies based solely on physical contact, it easily could have said so. The use of the term "simple assault" as shorthand for the physical contact rule only makes sense when describing *assaults*. By using this term, Congress strongly suggested that an assault was required for a § 111 conviction. This is espe-

cially true in light of the recent statutory amendments, which use the word "assault" in the description of both misdemeanors *and* felonies. *See* Pub. L. No. 110-177.

Moreover, even if it were linguistically plausible to interpret "simple assault" to mean "all cases lacking physical contact," this interpretation of the statute would lead to nonsensical results. Physical contact is a compelling metric for distinguishing between ordinary and aggravated *assaults*, but the same cannot be said for non-assaultive conduct. For example, in cases of mere resistance, it is not at all clear that resistance with physical contact is any more culpable than resistance without such contact, especially when, as in this case, the physical contact is initiated by the *arresting officer* rather than by the arrestee.

**[5]** Accordingly, we reject the government's reading of § 111, and hold, as suggested by the majority of our sister circuits, that convictions under this statute require at least some form of assault. Section 111(a) creates two distinct offenses, a misdemeanor and a felony, and Congress has distinguished between these two offenses using language that is only meaningful when describing *assaults*. Because Chapman did not assault Officer Buchanan, his conviction under § 111(a) must be reversed.

## CONCLUSION

18 U.S.C. § 111(a) allows misdemeanor convictions only in cases "where the acts in violation of [§ 111(a)] constitute . . . simple assault." By "tensing up" in anticipation of Officer Buchanan's arrest and disobeying his orders to move and lie down, Chapman may have made the officers' job more difficult, but his actions did not amount to a simple assault. Because Chapman's conduct did not amount to a "simple assault," his misdemeanor judgment of conviction under § 111(a) is

**REVERSED AND VACATED.**