*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

                                                    No. 07-2133

            *v.*

CHRISTIAN GAGNON,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-50199—George C. Steeh, District Judge.

Argued: December 9, 2008

Decided and Filed: January 29, 2009

Before: MARTIN and McKEAGUE, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Joseph A. Niskar, Detroit, Michigan, for Appellant. Kevin M. Mulcahy, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Joseph A. Niskar, Detroit, Michigan, for Appellant. Ross MacKenzie, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**OPINION**
_____

BOYCE F. MARTIN, JR., Circuit Judge. This case turns on the surprisingly vexing determination of what distinguishes a "simple assault" from "all other cases" under 18 U.S.C. § 111, which imposes punishment on anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" certain federal officers and

_____

[*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

employees. Defendant Christian Gagnon argues that his conviction was improper because the magistrate judge did not find that he committed "assault" and instead only found that he forcibly resisted, impeded, and interfered with an officer. But, because § 111 expressly prohibits more conduct than merely the commission of common-law assault, we affirm.

## I.

In June 2006, after a security guard at a marina in St. Clair Shores, Michigan identified Christian Gagnon as possibly having immigration status problems, federal Border Patrol Agents confronted him. Gagnon, a Canadian citizen, had been drinking – he testified to having had at least "six beers," "a cocktail," and "another beer" – and he did not have his immigration documents with him. He searched the boat cabin for his passport and called his fiancée for help, but was unable to locate it. The agents, concerned that he was improperly within the country, called their superior to request a notice for Gagnon to appear before an immigration judge. While loud music played in the background, one agent observed Gagnon "suddenly jump up" and testified later that he had feared that Gagnon might attack. The agents tried to force Gagnon to sit down, he resisted, and they handcuffed him. After a somewhat tumultuous back and forth, the agents loaded Gagnon into the back of their Border Patrol vehicle. They asserted that Gagnon made himself vomit by sticking his finger down his throat (Gagnon stated that his stomach was upset from drinking alcohol), and the agents alleged that Gagnon spit at them through the vehicle's security screen between "five and ten times" while continually yelling obscenities.

This encounter crescendoed the next day when one of the agents issued Gagnon a citation notice charging him with a violation of 18 U.S.C. § 111. The parties agreed to proceed with the matter as a Class B misdemeanor charge (and thus the government was not required to file an information and there was no formal indictment), and Gagnon was convicted of a misdemeanor following a bench trial before a magistrate judge. The magistrate judge sentenced him to six months in prison given his Guidelines range. The district court affirmed.

II.

Our jurisdiction can neither be waived nor assumed. A defendant may not appeal directly from a magistrate's judgment to the court of appeals, but rather must appeal to the district court. 18 U.S.C. § 3402; FED. R. CRIM. P. 58(g)(2). And, although there is no provision that expressly allows a defendant to appeal from a district court's judgment affirming a conviction by a magistrate, 18 U.S.C. § 1291 grants appellate courts the authority to entertain appeals from "all final decisions of the district courts." So this language includes final district court adjudications of appeals from misdemeanor trials by magistrate judges. *See, e.g., United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991). Indeed, such appeals have routinely been allowed, *see, e.g., United States v. Forcellati*, 610 F.2d 25, 30 (1st Cir. 1979), and there is little reason to refuse Gagnon's appeal for prudential reasons because Gagnon appeals a conviction that resulted in jailtime and criminal trials before magistrates ought to be encouraged.

III.

Before getting to the primary question in this appeal, we must first address a structural point of first impression in this Circuit. Although 18 U.S.C. § 111[1] appears to set out a single offense with three levels of punishment to be imposed depending on the

---

[1]Section 111 provides:

In general.– Whoever–

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [designated federal officer or employee] while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a [designated federal officer or employee] on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced penalty.–Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.

finding of certain sentencing elements, the Supreme Court has instructed that statutes with this type of structure in fact set forth separate crimes whose elements all must be proven to a jury.  In *Jones v. United States*, 526 U.S. 227, 252 (1999), the Court construed the federal carjacking statute – which also begins with a general offense provision and is followed by provisions defining levels of punishment based on varying criteria – and held that it defines separate crimes and that the factors leading to higher punishment must be considered elements of crimes and not sentencing enhancements. *Id.* This construction was necessary to avoid constitutional problems that would arise if elements of crimes were re-labeled "sentencing factors": Congress may not circumvent the constitutional requirement that elements of crimes must be submitted to a jury and proven beyond a reasonable doubt by re-labeling them "sentencing enhancements." *Id.* Imagine the problems if Congress created a statute entitled "theft" that distinguished between petty theft and violent burglaries on the basis of "sentencing enhancements" not submitted to juries or proven beyond a reasonable doubt.

In any event, *Apprendi v. New Jersey*, 530 U.S. 466 (2000) – which was decided after *Jones* and held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" – makes it indisputable that § 111 too must be treated as creating three separate crimes whose elements must all be submitted to a jury rather than as a single crime with three separate punishments determined on the basis of sentencing factors submitted to a judge. Those three crimes are: (1) "simple assault" (misdemeanor); (2) violations of § 111 that either involve a deadly or dangerous weapon or result in bodily injury (aggravated felony); or (3) "all other cases" (felony). 18 U.S.C. § 111(a)-(b). Our sister courts of appeals are unanimous on this point. *See, e.g.*, *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006); *United States v. Ramirez*, 233 F.3d 318, 321 (5th Cir. 2000) (overruled on other grounds by *United States v. Cotton*, 535 U.S. 625 (2002)).

IV.

So we turn to the primary question here: what is the difference between "simple assault" and "all other cases" under 18 U.S.C. § 111? Section 111 – titled, "Assaulting, resisting, or impeding certain officers or employees" – has two parts. The first prohibits "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing] with" certain active federal officers or employees and "forcibly assault[ing] or intimidat[ing]" former officers or employees. 18 U.S.C. § 111(a)(1)-(2). The second part sets out three levels of punishment for offenders: The first provides that anyone who violates § 111 and uses a deadly or dangerous weapon or inflicts bodily injury is guilty of a felony punishable by up to twenty years in jail; *id.* at § 111(b); the second provides that anyone who commits "only simple assault" is guilty of a misdemeanor punishable by up to a year in prison and a possible fine, *id.* at § 111(a); and the third provides that "in all other cases," a defendant is guilty of a felony punishable by up to eight years in prison and a possible fine. *Id.*[2]

The difficulty concerns how to distinguish between cases involving "only simple assault" from "all other cases." There is no obvious answer. The statute does not define "simple assault" and neither is it defined elsewhere in the U.S. Code. And, while § 111(a)(1) prohibits six different actions (forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering, with assault being but one), the punishment level clauses, by contrast, distinguish between misdemeanors and felonies solely in terms of "assault." Before turning to the government's interpretation distinguishing "simple assaults" from "all other cases," we begin with Gagnon's.

A.

At the close of the bench trial, the magistrate judge stated:

The statute proscribes the forcible assault, resisting, opposing, impeding, intimidating or interfering with any person which [sic] engaged in or on

---

[2]Congress recently amended § 111(a) as a part of the Court Security Improvement Act of 2007, effective January 7, 2008. *See* Pub. L. No. 110-177, § 208(b), 121 Stat. 2538 (2008). The amended version of the statute is not before the Court in this case, and in any event the amendments do not directly resolve the ambiguity at issue here.

account of the performance of official duties. The official duties element is conceded based upon the testimony, and in view of the defendant's admitted consumption of substantial alcohol, I am satisfied that – that *the element of forcible resistance, forcible impeding, forcible interference is satisfied in this case*. In view of that finding, I will find that the defendant is guilty of the offense charged and enter a finding to that effect.

J.A. 102 (emphasis added). Gagnon argues that these findings were insufficient to support his conviction. Although styled as a sufficiency-of-the-evidence challenge, the real question here concerns how this Court should interpret 18 U.S.C. § 111. This Court "review[s] questions of statutory interpretation de novo." *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008).

In reliance on the Tenth Circuit's decision in *United States v. Hathaway*, 318 F.3d 1001 (10th Cir. 2003), Gagnon argues that § 111 requires a finding of actual common-law "assault" to sustain any conviction under § 111.[3] In *Hathaway*, the Tenth Circuit vacated a felony conviction under § 111 because the government had not alleged or proven the elements of "assault." Specifically, the *Hathaway* court reasoned first that at common law "simple assault" was defined as "either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Id.* at 1007. Second, the *Hathaway* court observed that when Congress amended § 111 in 1994 to add the phrase "simple assault" and thus create § 111's misdemeanor offense level (previously all violations of § 111 were felonies), *see* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, it apparently borrowed the phrase from 18 U.S.C. § 113, which prohibits assaults within maritime and territorial jurisdiction. Because § 113 is limited only to "assaults" (and does not list any of the other five actions listed in § 111) the Tenth Circuit reasoned that § 111 too must be limited to prohibiting only common-law assault and nothing else. *Hathaway*, 318 F.3d at 1008-09.

---

[3]Although Gagnon heavily relies on *Hathaway* in his brief – and that case counsels in favor of his view – the case that most squarely supports his claim is the Ninth Circuit's opinion in *United States v. Chapman*, 528 F.3d 1215 (9th Cir. 2008).

So Gagnon's argument is that *Hathaway* supports his view that the government must prove that the defendant committed an assault and either that there was physical contact or the defendant had the intent to commit murder or another serious felony to sustain a felony conviction under § 111.[4] And the Ninth Circuit has explicitly endorsed this view. *United States v. Chapman,* 528 F.3d 1215, 1219 (9th Cir. 2008) (concluding that its construction of § 111 "leaves no room for a conviction that does not involve at least some form of assault"). This has obvious appeal for Gagnon: under this reading, "while a defendant could be charged with resisting, opposing, impeding, intimidating, or interfering, he could not be convicted unless his conduct also amounted to an assault." *Chapman*, 528 F.3d at 1219. Here, the magistrate judge did not find that Gagnon had committed forcible assault against the border patrol officers but instead found that he merely forcibly resisted, impeded, and interfered with them.

But the fatal problem with this reading is that it makes a great deal of what § 111 does say entirely meaningless, which flies in the face of the Supreme Court's repeated instruction that "courts should disfavor interpretations that render language superfluous." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). Gagnon's reading disregards five of the six actions Congress specifically delineated and instead collapses the inquiry into a single one: was an assault committed? However appealing this approach might be from a policy perspective or as an easy way to apply a rather convoluted statute, it is nevertheless impermissible as offensive to the statute's text. Congress left much open with § 111 – particularly when it carved into it a murky distinction between "simple assaults" and "all other cases" – but that is no excuse to ignore what it plainly does say.

Congress's drafting makes clear that § 111's purpose is to protect federal officers and certain employees from a broader range of harmful conduct than just common-law assault. If Congress meant only assault it could have said only assault, which is all it said

---

[4]Congress's recent amendment to § 111 approaches this rationale: Assaults are now treated as felonies if they "involve physical contact . . . or the intent to commit another felony." Pub. L. No. 110-77. Nevertheless, Congress's amendment does little to clarify the primary question in this appeal: whether § 111 is limited only to assaults or includes all the actions spelled out in § 111(a).

in 18 U.S.C. § 113. Instead, Congress chose to be specific: it named the statute "Assaulting, resisting, or impeding certain officers or employees," and it took the care to include six prohibited actions for active officials in subsection § 111(a)(1) – assaulting, resisting, opposing, impeding, intimidating, and interfering with – and then to cull those six down to two in § 111(a)(2), where it prohibited only forcibly assaulting and intimidating former federal officials. Congress would not have gone to this trouble if all it meant was assault alone. So that reading is unsatisfactory.[5]

## B.

The better reading of the statute is one we think indicated by the majority of our sister circuits that have addressed § 111 in detail. *See, e.g., United States v. Hazlewood*, 526 F.3d 862 (5th Cir. 2008)*; Vallery*, 437 F.3d at 630.[6] Like the Tenth Circuit's approach, the difference between "simple assault" and "all other cases" is determined in light of the common law definition quoted earlier, but this reading also recognizes that when Congress amended § 111 in 1994 it used the phrase "simple assault" as a term of art to incorporate the actions proscribed in § 111(a)(1) and § 111(a)(2). It did so through

---

[5] We can also dispose of a hyper-literal approach to § 111. This reading suggests that when Congress amended § 111 to say "simple assault," it meant something like "simpl[y] assault," in that if a defendant committed only assault, and nothing more, then he was guilty of a misdemeanor, but if he committed any of the other five prohibited actions (either alone or in conjunction with an assault) then he was guilty of a felony under the "all other cases" catchall. This reading leads to absurd results: a defendant who assaulted a border patrol officer would be guilty of a misdemeanor (so long as he did not use a deadly weapon or cause bodily injury), while one who passively resisted or impeded such an officer – but did not in any way threaten or cause an apprehension or fear of injury – would be guilty of a felony. Indeed, the incentive would be for suspects to assault agents rather than merely interfere with them, as the law would punish them more severely for their prudence. That cannot be what Congress intended.

[6] These cases, relied on by the government in its brief, did not precisely address the question before us – whether a defendant is guilty of a misdemeanor or nothing at all – and instead addressed a related but slightly distinct one: what actions constitute a felony conviction versus a misdemeanor under § 111(a)? Though not directly controlling, we believe that their rationales support our reading and we therefore disagree with the Ninth Circuit's view, despite it being the only circuit to have directly addressed this precise issue. *Compare Chapman,* 528 F.3d at 1219 ("[W]hile a defendant could be charged with resisting, opposing, impeding, intimidating, or interfering, he could not be convicted unless his conduct also amounted to an assault."), *with Vallery,* 437 F.3d at 633 ("Moreover, in addition to the *plain language* of the statute, case law supports Vallery by stating or implying that the simple assault provision applies to the entirety of § 111(a).") (emphasis added); *Yates*, 304 F.3d 818, 822 (8th Cir. 2002) ("We hold that, in the context of § 111, the definition of simple assault *is conduct in violation of § 111(a)*, which does not [] involve actual physical contact, a dangerous weapon, serious bodily injury, or the intent to commit murder or another serious felony.") (emphasis added); *Ramirez*, 233 F.3d at 322 (holding statutory definition of "all other cases" assault to be "any *physical contact* which by which a person 'forcibly assaults, resists, impedes, intimidates, or interferes with'" a covered officer) (emphasis in original).

the common-law lens of "simple assault" as excluding cases involving forcible physical contact or the intent to commit a serious felony.

In other words, the phrase "simple assault" differs from "all other cases" in that "simple assaults" involve the commission of *any* of the prohibited actions listed in § 111(a)(1) and § 111(a)(2), while "all other cases" covers the commission of these same violations *plus* the intent to commit a felony or resulting physical contact from forcible (and thus intentional) action. *See United States v. Kimes*, 246 F.3d 800, 808-09 (6th Cir. 2001) (holding that "forcible" applies to each of the prohibited actions in § 111 and further that intoxication is not a defense because § 111 creates "a general intent crime as to which evidence of diminished capacity is not admissible"). And "simple assault" becomes a term of art that includes the forcible performance of any of the six proscribed actions in § 111(a) *without* the intent to cause physical contact or to commit a serious felony.

Contrary to the Ninth Circuit's assertions, this reading would not make a felony out of cases where a defendant unlawfully resisted a federal agent where "the physical conduct is initiated by the arresting officer rather than the arrestee," *Chapman*, 528 F.3d at 1221, because, in those cases, the arrestee would not have "forcibly" initiated the physical contact and would therefore instead be guilty of only a misdemeanor "simple assault" under the statute. By contrast, if an arrestee resisted or interfered with covered officials by pushing, punching, or headbutting them, for example, he would be guilty of a felony under the "all other cases" clause.

## C.

Having concluded that misdemeanor "simple assaults" under § 111 refer to cases where a defendant has forcibly performed one of the prohibited actions of § 111(a) without forcibly or intentionally creating physical conduct himself and without the intent to commit a serious felony, this case becomes straightforward. The magistrate judge found that Gagnon forcibly resisted, impeded, and interfered with the border patrol agents who attempted to check on his immigration status and detain him. The record fully supports those conclusions on the basis of Gagnon's admitted drunkenness and the

magistrate judge's crediting the government's assertions that Gagnon acted defiantly while being detained and taken away.**7** We cannot say that those determinations were error, and they are all that the statute requires.

V.

For the above reasons, we affirm Gagnon's conviction and sentence.

---

**7**This construction of the statute also avoids the necessity of deciding the timeless question whether spitting a "lugie" towards someone, by itself, constitutes an "assault." *See* Br. for United States at 14 ("Although Gagnon's spittle may not have actually touched [the agent], it is clear . . . that Gagnon was attempting quite seriously to hit him. Given the size of the holes in the security screen a well-aimed lugie could have done the trick. Clearly, this conduct constituted a simple assault.") (citations to the record omitted). We also leave aside for another day the less timeless but no less profound question whether – assuming spitting alone could constitute an assault – a successful spit (one that hit its intended target) creates sufficient "physical contact" under our construction of § 111 to elevate lugie-hurling from misdemeanor "simple assault" into being a felony under the "all other cases" clause.