# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2010

Charles R. Fulbruge III
Clerk

No. 09-50059

UNITED STATES OF AMERICA

Plaintiff — Appellee

v.

MARIA HENRIETTA WILLIAMS, also known as Maria H. Williams,

Defendant — Appellant

Appeal from the United States District Court
for the Western District of Texas

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Maria Williams appeals her conviction on two counts of forcible assault of a federal officer under 18 U.S.C. § 111(a)(1). She also argues that an undisputed *Apprendi* error at sentencing requires the court to vacate her sentence and remand for resentencing. We affirm in part and vacate and remand in part.

## FACTS AND PROCEEDINGS

Maria Williams was arrested on May 31, 2008, in El Paso for forcibly resisting or assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). Military police officers Harris and Putnam and Sergeant Eichmann responded to a complaint a neighbor made against Williams for indecent exposure. When

No. 09-50059

Eichmann asked Williams if someone could watch her child while he discussed the complaint with her, she became upset and stated that she would not be arrested or go to jail. Eichmann then ordered Harris and Putnam to detain Williams. She informed the officers that she should not be handcuffed because she suffered from fibromyalgia syndrome, which causes her to suffer extreme pain when touched.[1]

Harris testified that when she attempted to handcuff Williams, Williams was holding a lit cigarette and "swinging her arms at us. The cigarette was my main focus at that point. We asked her to put it out, but she refused. The cigarette was swinging everywhere, . . . and I couldn't get a grip on one of her hands." Eichmann ordered Harris to use force. Harris testified that she grabbed Williams's wrist and shoulder in order to spin Williams to the ground. However, there was not enough room for Harris to put Williams on the ground, and both of them fell against a fence. As the two struggled, Williams pulled her arm away and as she did so she struck Harris on the side of her face. Eichmann then ordered Putnam to assist Harris, but when Putnam attempted to force Williams to the ground, Williams pulled away and struck him in the jaw. Putnam testified that he did not believe that Williams intentionally hit him, and Eichmann's statement about whether Williams meant to hit Putnam was also ambiguous: he testified that "[i]t wasn't like she was trying to fight with us, but we weren't going to take her."  After Williams was taken into custody by FBI agents, she told them that she moved her arms so that the officers could not handcuff her.

The grand jury returned a two-count indictment against Williams. Both counts charged her with violating § 111(a)(1), without reference to any physical contact between Williams and the officers. At trial, Williams moved for judgment of acquittal at the close of the Government's case and renewed her motion after

---

[1] At trial, Williams's physician confirmed the diagnosis.

she presented her defense. After the court denied her motions, the jury found Williams guilty on both counts. The presentence report (PSR) characterized Williams's offenses as class D felonies pursuant to 18 U.S.C. § 111(a)(2)—with a statutory maximum of eight years of imprisonment and three years of supervised release—because they involved physical contact with the arresting officers. The PSR assessed a total offense level of 15: a base level of 10, a 2-level enhancement for multiple counts, and a 3-level enhancement because the conduct involved physical contact with the officers. Williams's criminal history category of II[2] and total offense level of 15 yielded a guidelines range of 21-27 months' imprisonment. Williams objected to the enhancement for multiple counts and requested a variance. The district court overruled the objection and rejected the request for a variance. The district court adopted the PSR and sentenced Williams to 21 months of imprisonment and two years of supervised release on each count, to run concurrently.

## STANDARD OF REVIEW

Because Williams properly preserved her sufficiency of the evidence argument, this court's review is de novo. *See United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007). "In deciding whether the evidence was sufficient, we review all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id*. The court "consider[s] the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999) (quotation omitted). The evidence is insufficient to support the verdict "[i]f . . . the evidence gives equal or nearly equal

---

[2] In 1982, when 18 years old, Williams pleaded no contest to manslaughter charges in the death of her 15-month-old child. She also had a 1982 conviction for forgery and a 1984 conviction for escaping from custody.

No. 09-50059

circumstantial support to a theory of guilt, as well as to a theory of innocence." *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000).

The sufficiency challenge requires determining what conduct constitutes an offense under § 111(a)(1). The court reviews questions of statutory interpretation de novo. *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

## DISCUSSION

### A.    Williams's Conviction

While Williams's appeal is couched as a sufficiency of the evidence challenge, deciding it requires us to construe—as a matter of first impression in this circuit—the boundaries of the statute under which she was convicted. Section 111 provides, in relevant part:

(a) In general—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer] while engaged in or on account of the performance of official duties;

. . .

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

As discussed in cases in other circuits, the statute contains two ambiguities. First, it distinguishes between misdemeanor and felony conduct by use of the

4

undefined term "simple assault." Second, and central to this case, the statute appears to outlaw several forms of conduct directed against federal officers, only one of which is assault, but then distinguishes between misdemeanors and felonies by reference to the crime of assault. The difficulty that has confronted other courts is whether conviction for the non-assaultive conduct apparently outlawed by the statute (*i.e.*, "resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing]" with a federal officer) requires, at a minimum, conduct that amounts to "simple assault." To put the question another way, can a defendant be convicted of forcible resistance under this statute without having committed an underlying assault? Williams argues that criminal liability under § 111(a)(1) requires conduct amounting to an assault and, arguing that there was insufficient evidence of such, asks us to vacate the judgment against her.

"[T]his circuit has interpreted . . . § 111 to create three separate offenses: '(1) simple assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a dangerous weapon.'" *United States v. Williams*, 520 F.3d 414, 420 (5th Cir.) (quoting *United States v. Ramirez*, 233 F.3d 318, 321 (5th Cir. 2000), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 629-31 (2002)), *cert. denied*, 129 S. Ct. 111 (2008) (mem.). We have held that simple assault is a misdemeanor offense under § 111(a) and defined simple assault as an attempted or threatened battery. *United States v. Hazlewood*, 526 F.3d 862, 865 (5th Cir. 2008) (citing *Ramirez*, 233 F.3d at 321-22; *United States v. Vallery*, 437 F.3d 626, 631 (7th Cir. 2006)). By implication, the other two forms of assault are felonies under the statute. However, this court has never ruled on whether the additional conduct proscribed in § 111(a)(1) requires, at a minimum, underlying assaultive conduct.[3]

---

[3] *Williams*'s interpretation of § 111 as creating three assault offenses does not mean that the Fifth Circuit requires assaultive conduct for all convictions under § 111(a)(1). In both *Williams* and *Ramirez*, the defendants were charged with and tried for assault, rather than

Several circuits have split on this question. In *United States v. Chapman*, the Ninth Circuit held that convictions under the statute "require at least some form of assault." 528 F.3d 1215, 1221 (9th Cir. 2008). Construing an earlier version of the statute,[4] the Ninth Circuit noted that other circuits "have adopted a construction that leaves no room for a conviction that does not involve at least some form of assault." *Id.* at 1219. More importantly, the Ninth Circuit argued that without requiring some sort of underlying assault, it would be impossible to distinguish non-assaultive misdemeanor resistance cases from felonious resistance cases, because the now-superseded "statutory language clearly limits the category of 'misdemeanors' to cases of 'simple assault' and then categorizes 'all other cases' felonies." *Id.* at 1220. "If Congress had intended to prohibit both assaultive and non-assaultive conduct and intended to distinguish between misdemeanors and felonies based solely on physical contact, it easily could have said so." *Id.* at 1221. To hold that non-assaultive conduct was proscribed by the statute would lead to absurd results, the Ninth Circuit suggested, because "in cases of mere resistance, it is not at all clear that resistance with physical contact is any more culpable than resistance without such contact, especially

---

for any of the other conduct proscribed by § 111(a)(1). In neither case was the court considering whether a conviction under the statute required an underlying assault. Instead, it was interpreting § 111 in light of Supreme Court precedent requiring courts to construe statutes setting out separate punishments as creating separate, independent criminal offenses with different elements rather than a single criminal offense with different levels of punishment. *See Jones v. United States*, 526 U.S. 227 (1999). Accordingly, the language cited from those cases, regarding the division of the statute into three separate offenses, does not control the issue presented here.

[4] The "penalty" provision of the earlier version of the statute read:

> where the acts in violation of this section constitute only simple assault, [a convicted defendant shall] be fined under this title or imprisoned not more than one year, or both, *and in all other cases*, be fined under this title or imprisoned not more than 8 years, or both.

18 U.S.C. § 111(a) (2002) (emphasis added) (effective November 2, 2002 to January 6, 2008).

when . . . the physical contact is initiated by the *arresting officer* rather than by the arrestee." *Id.*

The Sixth Circuit, also construing the earlier version of the statute, reached the opposite conclusion. The court reasoned that interpreting § 111(a)(1) as requiring an underlying assault for a defendant to be convicted would render meaningless the five forms of non-assaultive conduct that are plainly proscribed by the statute. *United States v. Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009). "Congress left much open with § 111 . . . but that is no excuse to ignore what it plainly does say." *Id.* Under this reading, the phrase "simple assault" is "a term of art that includes the forcible performance of any of the six proscribed actions in § 111(a) *without* the intent to cause physical contact or to commit a serious felony" while "'all other cases' covers the commission of these same violations *plus* the intent to commit a felony or resulting physical contact." *Id.* at 1027. The Ninth Circuit's concern about the difficulty of determining whether a defendant was culpable for physical contact initiated by an arresting officer was misplaced, since any such contact would not have been "forcibly" initiated by the defendant and thus would not be proscribed by the statute. *Id.*; *see also United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) ("[A] defendant does not violate [§ 111(a)] unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc."); *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) ("Force is a necessary element of any § 111 violation.").

Even before the recent change in the statute, the Sixth Circuit rule was the better one, as it avoided rendering superfluous the other five forms of conduct proscribed by § 111(a)(1). The recent change in the statutory language —striking out "all other cases" in the penalty provision of the statute and specifying that the line between misdemeanors and felonies is drawn at physical contact or acting with the intent to commit another crime—also supports the conclusion that § 111(a)(1) prohibits more than assault, simple or otherwise.

7

Congress addressed the ambiguity identified by the Ninth Circuit by explicitly drawing the misdemeanor/felony line at physical contact, but it declined the opportunity to delete the other forms of conduct proscribed by the statute or to otherwise clarify that § 111(a)(1) convictions require an underlying assault. Finally, the Sixth Circuit's approach is more consonant with the dual purpose of the statute, which, the Supreme Court has noted, is not simply to protect federal officers by punishing assault, but also to "deter interference with federal law enforcement activities" and ensure the integrity of federal operations by punishing obstruction and other forms of resistance. *United States v. Feola*, 420 U.S. 671, 678 (1975); *see also id.* at 679-82 (discussing the legislative history of § 111's predecessor statute). We adopt the Sixth Circuit rule and hold that a misdemeanor conviction under § 111(a)(1) does not require underlying assaultive conduct.

With the adoption of this rule, this case becomes straightforward. There is ample evidence that Williams "forcibly . . . resist[ed]" federal officers. In fact, Williams admitted after being arrested that she swung her arms for the specific purpose of resisting the officers' attempts to handcuff her. We affirm Williams's conviction.

**B.    Williams's Sentence**

Williams argues that the district court committed plain error in sentencing her to 21 months of imprisonment and two years of supervised release on each count, because she was convicted of misdemeanors that are punishable by no more than 12 months of imprisonment and 12 months of supervised release. Williams did not challenge her sentence at the district court and thus this court's review is for plain error. *See United States v. Gonzalez-Ramirez*, 477 F.3d 310, 311-12 (5th Cir. 2007). To establish plain error, Williams must show that (1) there was error, (2) the error was plain, and (3) the error affected her substantial rights (the "prejudice prong"). *Id.* If plain error is established, the court may

exercise its discretion to grant relief, but "only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings" (the "fairness prong"). *Id.* (quotation marks omitted).

The parties agree that there was plain error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The fact of physical contact with the officers was neither charged in the indictment nor submitted to the jury. Under *Hazlewood*, which was issued several weeks before Williams's arrest and almost two months before the grand jury returned the indictment against her, such an indictment charges only misdemeanor assault. 526 F.3d at 866. The statutory maximum for a misdemeanor offense under § 111(a) is not more than 12 months of imprisonment and not more than 12 months of supervised release. The district court enhanced Williams's base offense level by three points because her conduct involved physical contact with the officers, which resulted in a guidelines range of 21-27 months' imprisonment. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

The parties differ as to whether the error affected Williams's substantial rights. In determining whether an error affects a defendant's substantial rights, we ask "whether the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand." *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009). Williams notes that the finding of physical conduct enabled the district court to sentence her to a term of imprisonment in excess of the statutory maximum. The government counters by arguing that the district court could have sentenced Williams to 21 months by running her sentences on the two counts consecutively.

This argument fails. Without the three-level enhancement for physical contact, Williams's offense level would have been 12, which combined with a

criminal history category of II yields a guidelines range of 12-18 months' imprisonment. This case, then, presents the rare instance where the appropriate guidelines range exceeds the statutory maximum for the offense. Although the district court could have imposed consecutive sentences on each count, under the terms of § 5G1.2(d) of the sentencing guidelines, it can do so "only to the extent necessary to produce a combined sentence equal to the total punishment"—*i.e.*, equal to the top of the guidelines range. U.S.S.G. § 5G1.2(d). Any sentence above 18 months, the top of that range, would be an upward departure. In this case, the district court ran the sentences concurrently and sentenced Williams at the bottom of what it believed to be the correct guidelines range; the district court made no findings in its written order of judgment supporting an upward departure; and there is no indication that the district court would have upwardly departed had it sentenced Williams under the correct guidelines range. Indeed, the district judge noted at sentencing that "a guideline sentence is appropriate and reasonable."

This case is similar to *United States v. Vasquez-Zamora*, in which this court remanded for resentencing after the *Apprendi* error that occurred when the district court sentenced a defendant to concurrent 65-month terms of imprisonment despite a statutory maximum imprisonment term of 60 months. 253 F.3d 211, 214 (5th Cir. 2001). The government argued that the district court could have run the terms consecutively to reach the same 65-month sentence, but we rejected that argument and remanded to permit the district court to fashion an appropriate sentence in the first instance. *Id.*; *see also United States v. Dentler*, 492 F.3d 306, 313-14 (5th Cir. 2007) (rejecting argument that district court's numerous comments at sentencing suggesting that it sought to impose stiffest penalty possible demonstrated that sentencing error did not substantially prejudice defendant's rights). There is a reasonable probability that Williams's sentence would have been different absent the error, and

No. 09-50059

accordingly her substantial rights have been prejudiced. *Garcia-Quintanilla*, 574 F.3d at 303-04.[5]

Finally, the parties disagree as to whether we should find that the plain error affected the fairness, integrity, or public reputation of judicial proceedings and exercise our discretion to remedy the error. We have taken "a generally permissive approach" to both the prejudice and fairness prongs of plain error review. *United States v. Ellis*, 564 F.3d 370, 378 n.44 (5th Cir. 2009). We have generally found that sentencing errors resulting in terms of imprisonment that exceed the correct guidelines range do affect the fairness, integrity, or public reputation of judicial proceedings. *See, e.g.*, *United States v. Aderholt*, 87 F.3d 740, 744 (5th Cir. 1996). In this case, the sentence exceeds the statutory maximum by nine months, a 75 percent increase. Given this excess over the statutory maximum and the permissiveness with which the court has construed the fairness prong, we hold that the sentence in this case affects the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we vacate Williams's sentence and remand to the district court for resentencing. We express no opinion as to the appropriate sentence.

## CONCLUSION

The judgment of the district court is **AFFIRMED** as to appellant's conviction. However, in light of the foregoing we **VACATE** her sentence and **REMAND** to the district court for resentencing.

---

[5] The government cited to several Seventh and Eighth Circuit cases suggesting that a defendant does not satisfy plain error review when the district court could have imposed consecutive rather than concurrent sentences to achieve the same sentence. *See United States v. Gray*, 332 F.3d 491, 493 (7th Cir. 2003); *United States v. Diaz*, 296 F.3d 680, 683-84 (8th Cir. 2002) (en banc); *United States v. Sturgis*, 238 F.3d 956, 960-61 (8th Cir. 2001). These cases are distinguishable. In each one, the court was upholding a sentence that would have been given anyway on remand through the application of U.S.S.G. § 5G1.2(d) without requiring, as here, an upward departure.