**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 4, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KIM DALE,

Defendant - Appellant.

No. 13-3128
(D. Kan.)
(D.C. No. 6:13-CR-10029-MLB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant, Kim Dale, appeals her conviction, following a jury trial, on two counts of interfering with court personnel working in the United

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

States Courthouse in Wichita, Kansas, in violation of 18 U.S.C. § 111(a)(1). She was sentenced to time served on both counts. Arguing that the evidence presented to the jury was insufficient to support her conviction, Ms. Dale appeals that conviction. We affirm.

**BACKGROUND**

Ms. Dale was involved in a civil lawsuit with her former employer. As a result, she had visited the District Court Clerk's office in the United States Courthouse in Wichita, Kansas, on numerous occasions prior to the events of February 27, 2012. She had visited the Clerk's office often enough that she had developed a cordial relationship with Sara Golay, the Court Operations Support Specialist. Ms. Golay indicated that, whenever Ms. Dale had come to the Clerk's office to present documents in her case for filing, Ms. Golay would file-stamp the originals for the court file, make copies of the originals, and return the copies to Ms. Dale.

On February 27, Ms. Dale presented some documents for filing. She handed the documents to Ms. Golay, who file-stamped them. Ms. Dale asked for a "copy" of the documents, so Ms. Golay made a copy and returned the copy to Ms. Dale. Ms. Dale then responded, "no, I want the originals." Tr. of Jury Trial at 21, R. Vol. 3 at 24. Ms. Golay refused to return the original documents to

Ms. Dale, explaining that "once something is filed, it becomes the Court's – it becomes part of her record. . . . [T]he Court gets to keep the original copy." Id.

When Ms. Dale insisted that she wanted Ms. Golay to return the originals, Ms. Golay went to her supervisor, Ms. Chastity Schoonover, Court Operations Supervisor, who told her to "go ahead and just make copies of those three pink documents for us to keep and she can have her originals back." Id. When Ms. Golay reported that, after talking to her supervisor, she could make copies for the court to keep and give the originals back to Ms. Dale, Ms. Golay testified that Ms. Dale "interrupted" her and said, "no you're not going to tell me what I can and can't file." Id. at 24-25.

At this point in time, the original documents were lying on Ms. Golay's side of a glass divider separating the private side from the public side of the counter. There was a small opening in the glass. Ms. Dale reached through the opening and quickly grabbed the originals from Ms. Golay's side of the partition. Ms. Schoonover then joined Ms. Golay at the window to talk to Ms. Dale. Ms. Golay testified that Ms. Dale kept asking, in a "very stern tone of voice," id. at 28, for her papers back. Ms. Golay further testified that Ms. Dale "did start to get loud" and that she (Ms. Golay) was "a little bit intimidated" because she had "never seen any customers bad like this." Id.

Ms. Schoonover testified that, by this time, "Ms. Dale was very, very agitated and made it very clear . . . that she felt like we were out to get her, we

were deliberately trying to make her miss her deadline, . . . and that we were sabotaging her again." Id. at 65. Ms. Schoonover further stated that Ms. Dale was "extremely agitated[,]" "pacing back and forth and rocking and . . . making large hand gestures and was very upset." Id.

Ms. Schoonover also indicated her general concerns about the developing situation: she testified she was "very concerned . . . to calm the situation down," as it was "obviously a security threat" and Ms. Dale was "obviously very, very upset" and "loud. Her voice was definitely raised. At that point she hadn't started screaming yet. That came a little bit later but she was very loud." Id. at 65-66. When Ms. Golay and Ms. Schoonover tried to explain to Ms. Dale that once a document is filed it becomes the court's document, Ms. Dale kept "interrupting and still hollering and she repeatedly said she was not leaving our office until she got exactly what she wanted, and in her words, the Marshals will have to drag [her] out of here." Id. at 67. Ms. Schoonover stated she "absolutely felt intimidated by that statement and by her demeanor overall. It's very intimidating when someone is very loud and demonstrative and right up in your face coming at you." Id.

Indeed, Ms. Dale was loud enough to disrupt a jury trial being conducted across the hall from the Clerk's office. The commotion also prevented the ordinary course of business in the Clerk's office: "Everything in the office basically stopped because the situation was so kind of volatile at the counter that

-4-

nobody knew exactly what was going to happen so everything just ground to a halt for the duration of the event." Id. at 68.

Finally, Ms. Schoonover directed Ms. Golay to call the United States Marshals to assist with the situation. Some forty-five seconds after Ms. Golay pressed the panic button, Deputy U.S. Marshal Logan Kline and Court Services Officer ("CSO") Harry Minor arrived in the Clerk's office. Deputy Kline testified that Ms. Dale "would continually get louder and louder and louder to them and so they could not even talk over how loud she was being." Id. at 145. When he asked her to calm down, she "became extremely agitated and raised her voice to an extreme level which I've never heard before." Id. at 146. She was so agitated and active that, as Deputy Kline testified, "I definitely thought that she was getting ready to hit me." Id. at 147.

After advising her that she would need to calm down or else be removed from the courthouse, the officers finally grabbed her by both arms in order to take her to the first floor of the courthouse. As they escorted her down to the first floor where the court services officers were stationed, Ms. Dale resisted:

> We have ahold of her just so she won't – on the way down she's trying to put her feet down and stop us from escorting her out of the building and she's essentially resisting being escorted out. And so we just had ahold of her just so we can make sure that she actually leaves the building. But in the whole process she's trying to, you know, put her weight on us and trying to put her feet down and stop us from doing this. And she's yelling at the top of her lungs different things about us and how she's taken advantage of and different things on the way down as well.

-5-

Id. at 151.

After the officers brought Ms. Dale to the court services post, Ms. Dale continued to yell. At one point, "[s]he immediately stood up, started yelling and then turned around at [Deputy Kline] and was yelling something and started to fling her arm toward [the] left side of [his] head." Id. at 152. Deputy Kline testified that he thought she would assault him: "[h]er loud yelling as well as throwing her arm around toward this side of my head, all of that together in my experience told me that she could be getting ready to assault me, and I didn't feel like I wanted to take a punch that day." Id. at 164.

Ms. Dale testified that she was not loud in her conversations with Ms. Golay or Ms. Schoonover: "I was talking to them just like I'm talking to you right now. I was talking to her just like that. There's no reason for me to get obnoxious." Id. at 175. She further stated she was "not loud. . . . I was very professional. . . . I never disrespect anybody in authority," id. at 176, and that she "never raised her voice[,] [t]here's no reason to." Id. at 192. She testified that, when the Marshals arrived, she calmly explained to them what had happened. Indeed, she claimed she did not begin "yelling and screaming" until the Marshals physically removed her from the Clerk's office. Id. at 181. Ms. Dale testified that she was "yelling and pleading, pleading with everybody at that time, please help me, please help me," id., and that, as she was being physically

removed, she was "screaming [her] head off . . . [because she] thought [she] was being kidnapped." Id. at 183.

Finally, with the assistance of Deputy Marshal Keith Lane, the officers placed Ms. Dale in handcuffs, took her to the U.S. Marshal's office holding cell, and obtained relevant information so they could prepare a report of the incident.

On February 28, 2012, the government filed a criminal complaint with the district court, charging Ms. Dale with two misdemeanor counts of interfering with court personnel working in the United States Courthouse, in violation of 18 U.S.C. § 111(a)(1). After the government rested its case, Ms. Dale moved for judgment of acquittal under Fed. R. Crim. P. 29, stating there was no "real need to argue it other than that." R. Vol. 3 at 165. The magistrate judge denied the motion at the conclusion of the trial, stating, "I think there is enough on the charges to go to the jury." Id. at 207. Ms. Dale was convicted on both counts on May 2, 2012, by a jury impaneled before the magistrate court. On August 22, 2012, the magistrate judge sentenced her to time-served on both charges.

Following her conviction, Ms. Dale appealed to the district court, which affirmed her convictions. Regarding Count 1, the district court found the evidence sufficient because "both clerks testified that they were frightened and intimidated by defendant's actions, which interfered with and impeded their ability to perform their official tasks." Mem. Decision of 5/7/13 at 2. On Count 2, the district court found "[t]he evidence is not only sufficient, but

essentially uncontroverted, that she resisted, opposed, impeded and interfered with the officers." Id. This appeal follows, in which Ms. Dale challenges the sufficiency of the evidence as to both Count 1 and Count 2.

## DISCUSSION

The criminal statute involved in this case is 18 U.S.C. § 111. It provides:

**(a)** **In general. --**Whoever**--**

**(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

**(2)** forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service, shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than 8 years, or both.

**(b)** **Enhanced penalty. --**Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

Section 111 is designed to protect certain federal officers and employees of the United States performing their official duties (those designated in § 1114) by criminalizing assaults against them. United States v. Feola, 420 U.S. 671, 678-84

-8-

(1975). In 1994, Congress added the misdemeanor simple assault provision to § 111(a) by amendment. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322 § 320101(a)(1), 108 Stat.1796, 2108.

In this case, Count 1 charged Ms. Dale with assaulting/interfering with a clerk of the United States District Court and Count 2 with assaulting/interfering with a United States Marshal. Ms. Dale does not challenge the jury instructions, which stated with respect to each count, that:

> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
> *First*: the defendant forcibly resisted, opposed, impeded, intimidated or interfered with Chastity Schoonover or Sara Golay [or Deputy United States Marshals Logan Kline or Keith Lane];
> *Second*: that Chastity Schoonover or Sara Golay [or Deputy United States Marshals Logan Kline or Keith Lane] were federal officers or employees who were then engaged in the performance of their official duty, as charged; and
> *Third:* the defendant did such acts intentionally.

Jury Instructions No. 6, 7, R. Vol. 2 at 20, 22. Ms. Dale argues the evidence presented was insufficient to support the jury's guilty verdicts on both counts.

"In reviewing the sufficiency of the evidence and denial of a motion for judgment of acquittal, this court reviews the record *de novo* to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." United States v. Irvin, 682 F.3d 1254, 1266 (10th Cir. 2012). "We review sufficiency-of-the-evidence challenges de novo, considering both

direct and circumstantial evidence, and all reasonable inferences therefrom, in the light most favorable to the government." United States v. Acosta-Gallardo, 656 F.3d 1109, 1123 (10th Cir.), cert. denied, 132 S. Ct. 540 (2011). We will reverse on sufficiency of the evidence grounds only if "no rational jury could have found each element of the crime beyond a reasonable doubt." United States v. Parada, 577 F.3d 1275, 1283 (10th Cir. 2009). "In evaluating the evidence under this standard, the court will not question the jury's credibility determinations or its conclusions about the weight of the evidence." United States v. Lazcano-Villalobos, 175 F.3d 838, 843 (10th Cir. 1999).

Ms. Dale focuses her argument on the "forcibly" component of the first element of the offense described in both counts. "Specifically, she argues that there was no evidence of the force necessary to commit any of the possible methods to violate the statute." Appellant's Br. at 10. As the government points out, the district court instructed the jury on this component:

> To find the defendant guilty, you must find beyond a reasonable doubt that she acted forcibly. The term "forcibly" does not require that the defendant actually touched the federal officers or employees named above. However, without an actual touching, proof that the defendant acted forcibly requires proof of a threat of being assaulted, resisted[,] opposed, impeded, intimidated, or interfered with, coupled with an apparent present ability by the defendant to carry out the threat.

Jury Instructions 6,7, R. Vol. 2 at 20-22.

-10-

Considering all the evidence, and viewing it in the light most favorable to the government, there is sufficient evidence that Ms. Dale acted forcibly in, at a minimum, resisting, impeding, intimidating and interfering with both the employees in the Clerk's office and the Marshals. She demanded her documents back; she actually grabbed them from across the partition; she yelled at everyone, including accusing them of attempting to sabotage her case and kidnap her; and she resisted being removed from the Clerk's office and being taken to the U.S. Marshal's holding area. Both Ms. Golay and Ms. Schoonover testified they were intimidated by Ms. Dale's actions and that normal business in the Clerk's office came to a stop. Deputy Marshal Kline testified that he thought Ms. Dale was going to assault him. In short, there was ample evidence supporting Ms. Dale's conviction on both Counts 1 and 2.

## CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Ms. Dale's Rule 29 motion for judgement of acquittal and we AFFIRM the conviction entered in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge