**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JAKOTA ALLEN WOLFNAME,

     Defendant - Appellant.

No. 15-8025

————————————————————

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:14-CR-00223-SWS-1)**
————————————————————

Howard A. Pincus, Assistant Federal Public Defender ),Virginia L. Grady, with him on
the briefs) Office of the Federal Public Defender, Denver, Colorado, for Defendant-
Appellant.

Jason M. Conder, Assistant United States Attorney (Christopher A. Crofts, United States
Attorney, and Kerry J. Jacobson, Assistant United States Attorney, with him on the brief),
Office of the United States Attorney, Lander, Wyoming, for Plaintiff-Appellee.
————————————————————

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **MORITZ**, Circuit Judges.
————————————————————

**MORITZ**, Circuit Judge.
————————————————————

    In this case, the parties ask us to decide whether assault is an element of every

conviction under 18 U.S.C. § 111(a)(1)—a statute that prohibits forcibly resisting,

opposing, impeding, intimidating, interfering with, *or* assaulting a federal officer engaged in the performance of his or her official duties.

As it turns out, however, an earlier panel of this court has already answered that question. *See United States v. Hathaway*, 318 F.3d 1001, 1007-10 (10th Cir. 2003) (defining each of § 111's proscribed offenses based on the type of assault involved). Thus, the district court in this case erred in failing to instruct the jury that to convict Jakota Wolfname of resisting or interfering with an officer under § 111(a)(1), the jury had to find that Wolfname assaulted that officer.

But that doesn't necessarily mean we can grant Wolfname a new trial. Because he failed to challenge the elements instruction below, we may reverse only if the district court's failure to adequately instruct the jury satisfies our test for plain error. Under the facts of this case, we conclude that it does. The error was clear and obvious under *Hathaway*. It affected Wolfname's substantial rights. And it seriously affected the fairness, integrity, or public reputation of Wolfname's trial. Accordingly, we reverse his conviction and remand for further proceedings.

## BACKGROUND

While responding to an early-morning 911 call, Blaine Parnell—a police officer with the United States Bureau of Indian Affairs—attempted to arrest Wolfname on two outstanding tribal warrants. Parnell ordered Wolfname to put his hands behind his back. But Wolfname had other ideas: he took off running instead. Parnell gave chase and eventually caught up when Wolfname hit a barbwire fence. Both men went over the fence, and Wolfname struggled with Parnell as Parnell

2

worked to subdue him. Parnell was eventually able to handcuff Wolfname. But not before Wolfname managed to grab Parnell's thumb and pull it towards Parnell's wrist.

As the result of his flight from Parnell and the ensuing scuffle, a grand jury indicted Wolfname for "knowingly and forcibly assault[ing], resist[ing], and interfer[ing] with" Parnell while Parnell "was engaged in the performance of his official duties, which resulted in bodily injury to . . . Parnell." *See* § 111(a)(1), (b).

At trial, Wolfname didn't dispute that he ran from Parnell. But he did testify that Parnell placed him in a chokehold once the two men ended up on the other side of the barbwire fence. As a result, Wolfname said, he was unable to breathe. And while Wolfname admitted that he grabbed Parnell's hand, he denied that he intended to injure Parnell. Instead, Wolfname explained, "I just wanted to breathe, and that's why I did that, pulled his arm from my neck." R. vol. 3, 260.

Parnell, however, told a different story. He maintained that he put Wolfname in a headlock, not a chokehold. And he insisted that unlike a chokehold, a headlock only restricts a suspect's movement; it doesn't interfere with a suspect's breathing. Besides, Parnell testified, Wolfname didn't grab his thumb until *after* Parnell released him from the headlock.

At the close of evidence, the government asked the jury to convict Wolfname of "resisting, interfering [with], and assaulting" Parnell. R. vol. 3, 361. In doing so, it equated assault with being "willing to injure." *Id.* at 362. The government also asked

3

the jury to find that Wolfname made physical contact with, and inflicted bodily injury upon, Parnell.

The government got most of what it asked for. The jury found Wolfname guilty of resisting and interfering with Parnell in violation of § 111(a)(1). It also found that Wolfname made physical contact with Parnell. But the jury wrote, "No," next to the assault option on the verdict form. R. vol. 2, 11. And despite testimony from Parnell and his orthopedic surgeon indicating that Parnell suffered damage to a ligament in his thumb during the struggle, the jury also declined to find that Wolfname inflicted bodily injury on Parnell.

The district court imposed a 24-month prison sentence. Wolfname appeals.

## DISCUSSION

On appeal, Wolfname argues that we should reverse his conviction because the district court erred in failing to instruct the jury on assault as an element of resisting and interfering with an officer under § 111(a)(1). But Wolfname didn't raise this argument below. So we review only for plain error. *See United States v. Makkar*, 810 F.3d 1139, 1144 (10th Cir. 2015). Under our plain-error test, we can reverse Wolfname's conviction only if (1) an error occurred; (2) the error was plain; (3) the error affected Wolfname's substantial rights; and (4) the error "seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *Id.*

4

**I.      The district court erred in failing to instruct the jury that assault is an element of resisting or interfering with an officer under § 111(a)(1).**

Wolfname argues that common-law assault, i.e., an attempt or threat to injure Parnell, was an essential element of his conviction for resisting and interfering with an officer under § 111(a)(1). Thus, he maintains, the district court erred in failing to instruct the jury on that element. In support, Wolfname cites *United States v. Hathaway*, 318 F.3d 1001 (10th Cir. 2003).

In *Hathaway*, the issue before us was whether § 111 sets forth separate offenses with separate elements, or whether § 111 instead contains a single offense and separate sentencing factors. *See id.* at 1006 (explaining that unlike sentencing factors, "elements must be charged in the indictment, submitted to a jury, and proven by the [g]overnment beyond a reasonable doubt." (quoting *Jones v. United States*, 526 U.S. 227, 232 (1999))). The version of § 111(a) at issue in *Hathaway* provided:

> **(a) In general.**—Whoever—
>
> > **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [certain individuals] while engaged in or on account of the performance of official duties . . .
>
> shall, where the acts in violation of this section constitute only *simple assault*, be fined under this title or imprisoned not more than one year, or both, and *in all other cases*, be fined under this title or imprisoned not more than three years, or both.

*Id.* at 1005 (emphasis added) (quoting § 111 (2000)).

Citing *Jones*, we easily concluded that § 111(a) proscribes two separate offenses—a misdemeanor offense and a felony offense—"each element of which must be charged in the indictment and proven to the jury beyond a reasonable doubt."

5

*Id.* at 1107. Then we moved on to the more difficult task: delineating those elements. That endeavor, we pointed out, turned primarily on the definitions of two phrases: "simple assault" and "all other cases." *Id.*

First, we defined "assault," in relevant part, as "a willful attempt to inflict injury upon the person of another, or . . . a threat to inflict injury upon the person of another." *Id.* at 1008 (quoting *United States v. Joe*, 831 F.2d 218, 220 (10th Cir. 1987)). Next, we defined "simple assault" as assault (i.e., an attempt or threat to injure) that "does not involve actual physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit murder or any felony other than those referred to in § 113(a)(2)." *Id.*

Finally, with this definition of "simple assault" in hand, we defined § 111(a)'s two offenses. Critically—at least for purposes of analyzing Wolfname's argument in this case—we did so based on the type of assault involved in each. First, there's a misdemeanor § 111(a) violation. This offense requires proof of simple assault, i.e., "assault which does not involve actual physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit" certain felonies. *Id.* Second, there's a felony § 111(a) violation. That offense requires proof of "all other cases" assault, i.e., "any assault that involves actual physical contact or the intent to commit [certain

6

felonies] but does not involve a deadly or dangerous weapon or bodily injury." *Id.* at 1008-09.[1]

Based on this analysis, Wolfname argues that *Hathaway* made assault an essential element of *every* § 111(a)(1) offense. We agree. True, we didn't explicitly state in *Hathaway* that the government must prove assault when it alleges a defendant violated § 111(a)(1) by resisting, opposing, impeding, intimidating, or interfering with—rather than assaulting—an officer. But that holding is implicit in what we did say.

In *Hathaway*, we set out to "determine the elements of the offense or offenses proscribed by § 111(a)." *Id.* at 1006. We then divided § 111(a) into two offenses: a misdemeanor and a felony. Finally, we defined each of those offenses based on the type of assault involved. *See id.* at 1009 ("[T]he only difference between a felony offense and a misdemeanor offense under § 111(a) is the nature of the assault."). Because a § 111(a)(1) conviction for resisting, opposing, impeding, intimidating, or interfering must fall into one of these two categories, a conviction for any of these acts necessarily involves—at a minimum—simple assault. Accordingly, assault is necessarily an element of any § 111(a)(1) conviction under *Hathaway*.

This conclusion should come as no surprise; we're hardly the first to reach it. In fact, at least three of our sister circuits have concluded that *Hathaway* "leaves no room for a [§ 111(a)] conviction that does not involve at least some form of assault."

---

[1] We also indicated that § 111(b) proscribes a third (felony) offense: one that involves assault with a deadly or dangerous weapon or assault that causes bodily injury. *Hathaway*, 318 F.3d at 1007-09.

*United States v. Chapman*, 528 F.3d 1215, 1219 (9th Cir. 2008). *Accord United States v. Green*, 543 F. App'x 266, 272 n.9 (3d Cir. 2013) (unpublished) (interpreting *Hathaway* as "finding some assaultive conduct required to violate § 111"); *United States v. Davis*, 690 F.3d 127, 135 (2d Cir. 2012) (citing *Hathaway* as example of case that treats assaultive conduct as essential element of any § 111(a) misdemeanor conviction). Yet despite this consensus, the government resists this reading of *Hathaway*. In support, it advances three general arguments.

First, the government argues that the *Hathaway* court was only required to decide the elements of § 111(a)(1) assault, not the elements of § 111(a)(1) resisting, opposing, impeding, intimidating, or interfering. This is so, the government says, because the defendant in *Hathaway* conceded that we could sustain his conviction for misdemeanor assault under the statute. Thus, the government asserts, we had no reason to address how § 111(a)(1) might define a conviction based on any of the other prohibited acts.

We disagree. It's not at all clear that the defendant's concession in *Hathaway* was as specific as the government suggests. Instead, it appears the defendant only generally conceded there that we could sustain a *misdemeanor conviction* under the statute—not a misdemeanor conviction *for assault*. *See* 318 F.3d at 1010 ("[The defendant] does not contend that he was not validly convicted of violating § 111(a); instead, he argues that in light of the deficient indictment, the district court could only have viewed his conviction as one for the misdemeanor."). Moreover, the indictment in *Hathaway* alleged that the defendant assaulted, resisted, opposed,

8

impeded, intimidated, and interfered with the victim. *Id.* at 1004. Thus, in holding that the indictment was "insufficient to allege a felony violation of § 111(a)(1)," the question of how to define a felony conviction based on each of those acts was squarely before us. *Id.* at 1010.

Next, the government directs our attention to two unpublished Tenth Circuit cases: *United States v. Waweru*, 628 F. App'x 608 (10th Cir. 2015), and *United States v. Dale*, 539 F. App'x 880 (10th Cir. 2013). According to the government, we affirmed the defendants' § 111(a)(1) convictions in both of these cases despite the absence of "conduct that was . . . charged or proven as 'assault.'" Aplee. Br. 21. Thus, the government deduces, assault cannot be an element of every § 111(a)(1) conviction under *Hathaway*; if it were, this court would have reversed the defendants' convictions in *Waweru* and *Dale*.

But as the government conceded at oral argument, it doesn't appear that the defendant in *Waweru* ever argued that assault was an element of his conviction under *Hathaway*. The same is true in *Dale*. Nor does it appear that we considered the question sua sponte in either case.[2] Thus, these cases wouldn't be precedential even if they were published. *See* 10th Cir. R. 32.1(A) (noting that unpublished decisions aren't precedential); *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1084 (10th Cir. 2011) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so

---

[2] In fact, neither case even cites *Hathaway*.

9

decided as to constitute precedents." (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))).

Finally, the government makes a last-ditch effort: it argues that adopting Wolfname's reading of *Hathaway* will result in an interpretation of § 111 that (1) renders some of the statute's language superfluous; (2) is inconsistent with other circuits' interpretation of the statute; and (3) contradicts legislative intent.

But even assuming the government could win that particular battle, it would still lose the war. That's because even if the government's assertions are true, it doesn't mean that Wolfname's interpretation of *Hathaway* is incorrect. At best, it means that *Hathaway*'s interpretation of § 111 is incorrect. And even if we assume that's the case, we lack authority to overrule *Hathaway*'s interpretation of § 111 absent en banc review or an intervening Supreme Court decision. *See United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014). In short, we are bound by *Hathaway*. And *Hathaway* makes assault—i.e., an attempt or threat to injure—an element of every § 111(a) violation under the version of the statute then in effect.

Of course, that doesn't necessarily mean that the instruction in this case was deficient. As both parties point out, Congress subsequently amended § 111(a) in 2008. And according to the government, the 2008 amendment clarified "that proof of an underlying technical assault is not required for a conviction on the statute's other five prohibited forms of forcible conduct." Aplee. Br. 19.

We think that the amendment did just the opposite. In relevant part, the statute now reads:

10

**(a) In general.**--Whoever--

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [certain individuals] while engaged in or on account of the performance of official duties . . .

> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts *involve physical contact with the victim of that assault or the intent to commit another felony*, be fined under this title or imprisoned not more than 8 years, or both.

§ 111(a) (2008) (emphasis added).

Essentially, Congress amended § 111(a) to replace the phrase "in all other cases" with a slightly modified version of the definition we gave that phrase in *Hathaway*. *Compare Hathaway*, 318 F.3d at 1008-09 (defining "all other cases" to include "any assault that involves actual physical contact or the intent to commit" certain felonies), *with* Court Security Improvement Act of 2007, Pub. L. No. 110–177, 121 Stat 2534 ("striking 'in all other cases' and inserting 'where such acts involve physical contact with the victim of that assault or the intent to commit another felony'").

In short, the 2008 amendment didn't controvert our holding in *Hathaway*; instead, it effectively codified it. Thus, *Hathaway* remains good law. And under *Hathaway*, assault is an element of any § 111(a)(1) offense. Accordingly, the district court erred in failing to instruct the jury that, to convict Wolfname of resisting or interfering with Parnell, it had to find that Wolfname attempted or threatened to injure him.

11

But that still doesn't end our inquiry. Wolfname failed to raise his assault-is-an-element argument below. So we can only reverse his conviction if we conclude that the district court's instructional error satisfies our plain-error test—i.e., if the instructional error (1) was plain; (2) affected Wolfname's substantial rights; and (3) "seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *Makkar*, 810 F.3d at 1144. We turn to those matters next.

## II.    The instructional error was plain.

"An error is 'plain' if it is 'clear or obvious' under 'current, well-settled law.'" *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011) (quoting *United States v. Whitney*, 229 F.3d 1296, 1308-09 (10th Cir. 2000)). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *Id.* (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)).

According to the government, "neither the Supreme Court nor the Tenth Circuit has directly addressed" whether assault is an element of every § 111(a)(1) conviction, and the "circuits [that] have considered the matter are split." Aplee. Br. 7. Thus, the government concludes, "there cannot be a finding of [plain] error." *Id. See United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006) ("If neither the Supreme Court nor the Tenth Circuit has ruled on the subject, we cannot find plain error if the authority in other circuits is split.").

12

We agree with the government that the circuits are split on this issue. *Compare Davis*, 690 F.3d at 135-36 (requiring proof of assaultive conduct to support misdemeanor § 111(a) conviction for resisting), *with United States v. Williams*, 602 F.3d 313, 318 (5th Cir. 2010) (holding that misdemeanor § 111(a)(1) conviction for resisting doesn't require proof of assaultive conduct). Likewise, we agree that if neither this court nor the Supreme Court has directly addressed a particular issue, then a circuit split on that issue weighs against a finding of plain error. *See United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011).

But that's as far as our agreement with the government can extend because—contrary to the government's assertion—we have, in fact, "directly addressed" this issue. Aplee. Br. 7. *See Hathaway*, 318 F.3d at 1005-10. In *Hathaway*, we explained that to resolve the issue before us, we had to "determine the elements of the offense or offenses proscribed by § 111(a)." 318 F.3d at 1006. We then held that some type of assault is an element of every § 111(a) conviction. *See id*. at 1009 ("[T]he only difference between a felony offense and a misdemeanor offense under § 111(a) is the *nature* of the assault" involved. (emphasis added)). And, as we discussed above, nothing in the 2008 amendment calls that holding into question.

Accordingly, the fact that other circuits are split on the issue of whether assault is an element of every § 111(a) conviction doesn't prevent us from

13

characterizing the error in this case as plain.[3] *See Teague*, 443 F.3d at 1319

(stating that circuit split precludes finding of plain error *if* neither this court

nor the Supreme Court has addressed the issue); *see also Makkar*, 810 F.3d at

1145 (reasoning that "another circuit's commission of an error doesn't

necessarily and always 'control' the plain error inquiry" (quoting *Ahidley*, 486

F.3d at 1193 n.7)).

In short, an error is plain if it is "contrary to well-settled law."

*Thornburgh*, 645 F.3d at 1208 (quoting *Ruiz-Gea*, 340 F.3d at 1187). Because

*Hathaway* is well-settled law *in this circuit*, the district court's failure to

instruct the jury in accord with *Hathaway* amounts to plain error. *See id.*

---

[3] Although the government doesn't explicitly argue as much in asserting that the instructional error isn't plain, circuits are also split on the meaning of the 2008 amendment itself. *Compare Davis*, 690 F.3d at 136 (concluding that amendment itself demonstrates Congress' intent to require proof of assaultive conduct), *with Williams*, 602 F.3d at 317 (concluding that amendment "supports the conclusion that § 111(a)(1) prohibits more than assault, simple or otherwise"); *see also United States v. Gagnon*, 553 F.3d 1021, 1025 n.4 (6th Cir. 2009) (stating that 2008 "amendment does little to clarify . . . whether § 111 is limited only to assaults or includes all the actions spelled out in § 111(a)"). We decline to rely on this circuit split as persuasive evidence that the error in this case isn't plain for two reasons. First, both the Sixth Circuit in *Gagnon* and the Fifth Circuit in *Williams* were writing on a clean slate; neither had to take *Hathaway*'s analysis into account in interpreting the 2008 amendment. Second, in discussing the amendment, both the Sixth Circuit in *Gagnon* and the Fifth Circuit in *Williams* elided Congress' use of the phrase "involve[s] physical contact with the victim *of that assault*." Court Security Improvement Act of 2007, Pub. L. No. 110–177, 121 Stat 2534 (emphasis added)). In fact, the *Gagnon* court went so far as to replace that phrase with ellipses in quoting the amended version of the statute. 533 F.3d at 1025 n.4. Because this phrase unambiguously expresses that assault is an element of every felony § 111(a) conviction, a circuit split on the issue wouldn't dissuade us from finding plain error even if the government had preserved this argument. *See United States v. Ahidley*, 486 F.3d 1184, 1193 and n.7 (10th Cir. 2007) (finding plain error despite circuit split because statutory language was unambiguous); *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

**III.** **The instructional error affected Wolfname's substantial rights and the fairness, integrity, or public reputation of a judicial proceeding.**

For purposes of our plain-error test, "[a]n error seriously affects the defendant's substantial rights . . . when the defendant demonstrates 'that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quoting *United States v. Mendoza*, 698 F.3d 1303, 1310 (10th Cir. 2012)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008)).

Here, the district court failed to instruct the jury that to convict Wolfname of resisting or interfering with Parnell, it had to find that Wolfname assaulted, i.e., attempted or threatened[4] to injure, him. *See Hathaway*, 318 F.3d at 1008 (defining assault). And, but for that error, we agree that there is a reasonable probability the jury would have reached a different verdict. After all, Wolfname unequivocally denied that he intended to injure Parnell. Instead, Wolfname testified, he only grabbed Parnell's hand and pulled Parnell's arm away from his neck so that he could breathe. Critically, after hearing this testimony, the jury declined to convict Wolfname of assaulting Parnell—even after the prosecutor equated assault with being "willing to injure." R. vol. 3, 362. These facts, standing alone, are sufficient to

---

[4] The government doesn't suggest that it alleged, let alone proved, that Wolfname threatened to injure Parnell. Accordingly, we limit our inquiry to its allegation that Wolfname attempted to injure him.

15

undermine our confidence in the verdict. *See Rosales-Miranda*, 755 F.3d at 1258 (quoting *Hasan*, 526 F.3d at 665).

Nevertheless, despite the jury's refusal to convict Wolfname of assaulting Parnell, the government maintains that the district court's failure to instruct the jury that assault was an element of resisting and interfering with Parnell didn't affect Wolfname's substantial rights. First, the government points out that in convicting Wolfname, the jury necessarily found that he acted forcibly, i.e., that he used, attempted to use, or threatened to use physical force. Second, it argues that Wolfname did, in fact, injure Parnell.

But a finding that Wolfname *used force* (or attempted or threatened to use it) isn't the same as a finding that Wolfname attempted or threatened to *inflict injury*. Likewise, a finding that Wolfname *actually* injured Parnell doesn't necessarily equate with a finding that Wolfname *intended* to injure him. Moreover, the jury explicitly rejected the government's assertion that Wolfname injured Parnell. Accordingly, we agree with Wolfname that the district court's erroneous failure to instruct the jury on the element of assault affected his substantial rights.

It also affected the fairness, integrity, or public reputation of the trial. True, a district court's failure to instruct the jury on an essential element of the crime charged won't always satisfy the fourth prong of the plain-error test. *See, e.g.*, *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (declining to reverse under fourth prong of plain-error test because, even assuming failure to instruct on element of offense affected defendant's substantial rights, evidence supporting omitted element was

16

overwhelming and uncontroverted). But here, the evidence of the omitted element—that Wolfname threatened or attempted to injure Parnell—was neither overwhelming nor uncontroverted. Thus, we agree that reversal is appropriate.

## CONCLUSION

The circuits may be split on the meaning of § 111. But they're not split on the meaning of *Hathaway*. That opinion, as the Ninth Circuit has pointed out, "leaves no room for a [§ 111(a)] conviction that does not involve at least some form of assault." *Chapman*, 528 F.3d at 1219. *Accord Green*, 543 F. App'x at 272 n.9; *Davis*, 690 F.3d at 135. Moreover, our analysis in *Hathaway* appears not only to have *survived* the 2008 amendment to § 111(a), but perhaps to have *inspired* it. *See* 153 Cong. Rec. S15789-01 (daily ed. December 17, 2007) (statement of Sen. Kyl) (indicating that 2008 amendment "codif[ied]" *Hathaway*'s "thoughtful explanation" regarding meaning of phrase "in all other cases"). Accordingly, the district court's failure to instruct the jury on the essential element of assault constitutes plain error. And because that plain error affected Wolfname's substantial rights and the fairness, integrity, or public reputation of his trial, we reverse Wolfname's conviction and remand for further proceedings.

17