FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CONNOR WILLIAM BIGGS FARLEY,

    Defendant - Appellant.

No. 21-8013

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 1:20-CR-00084-NDF-1)**
_____

Josh Lee, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Timothy J. Forwood, Assistant United States Attorney (L. Robert Murray, Acting United States Attorney, with him on the briefs), Cheyenne, Wyoming, for Plaintiff-Appellee.
_____

Before **BACHARACH**, **EBEL**, and **CARSON**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Defendant-Appellant Connor Biggs Farley appeals the 630-month (52.5-year) sentence he received after pleading guilty to three counts of producing child pornography in violation of 18 U.S.C § 2251.  In imposing this sentence, the district court rejected the

sentence of 20 to 40 years (240 to 480 months) that was stipulated in Mr. Farley's plea agreement with the government, but the court also varied downward from the 1080-month (90-year) sentence recommended by the presentence report, which corresponded to the statutory maximum sentence of 30 years (360 months) on each count, run consecutively.

Mr. Farley asserts that the district court's selection of his sentence was both procedurally and substantively unreasonable. We find that the district court's method for determining Mr. Farley's sentence involved plain errors of law, rendering the sentence procedurally unreasonable. Accordingly, we REVERSE and REMAND for resentencing.

## I.    BACKGROUND

In April 2019, Wyoming authorities began investigating Mr. Farley, his spouse Ray Lucero, and an associate named Richard Willden. Agents uncovered many exchanges of child pornography between the three men, along with photo and video evidence that Mr. Lucero and Mr. Farley sexually abused and took nude photos of Mr. Lucero's nine-year-old nephew; sexually abused Mr. Farley's one-year-old cousin; and sexually abused a five-year-old boy who had temporarily lived with Mr. Farley and Mr. Lucero. On May 21, 2020, Mr. Farley was indicted for production, distribution, and possession of child pornography in violation of 18 U.S.C. § 2251(a).

On November 24, 2020, Mr. Farley submitted to the district court a plea agreement he had reached with the government, under which Mr. Farley would plead guilty to three of the charged counts of producing child pornography: Count One based on the sexual abuse of the nine-year-old nephew, Count Two based on the sexual abuse

of Mr. Farley's infant cousin, and Count Five based on the sexual abuse of the five-year-old boy.  In exchange, the government agreed to a stipulated sentence of 20 to 40 years' imprisonment.  Mr. Farley pled guilty under this agreement on December 14, 2020.[1]

Prior to sentencing, the district court ordered the preparation of a presentence investigation report (PSR) calculating the guidelines range for Mr. Farley's sentence. The PSR calculated a combined offense level of 49 after several enhancements and a decrease for acceptance of responsibility under the guidelines.  The maximum offense level provided by the guidelines, however, is 43, so the PSR applied an offense level of 43 and a Criminal History Category of II.  Based on those calculations, the guideline range was life in prison.  But the statutory maximum for any single conviction under 18 U.S.C. § 2251 is 30 years (with a mandatory minimum of 15 years, or 180 months), so the PSR recommended a sentence of 30 years on each count to be run consecutively, pursuant to U.S.S.G. § 5G1.2, for a total of 1080 months' imprisonment.  The PSR noted that the 20-to-40-year range stipulated in the plea agreement would require a significant downward variance.

At Mr. Farley's sentencing hearing on March 25, 2021, neither party objected to the PSR's calculations, but both parties argued in favor of the plea agreement's lesser stipulated sentence.  Defense counsel urged the district court to impose a sentence of 20 years, at the bottom of the range stipulated in the plea agreement, based on the mitigating

---

[1] This was <u>not</u> a plea agreement under Federal Rule of Criminal Procedure Rule 11(c)(1)(C), so the district court was not bound by the parties' agreed-upon sentence upon accepting the plea.

factors presented in Mr. Farley's sentencing memorandum.  These factors included Mr. Farley's remorse at committing the crimes; his traumatic childhood that included multiple instances of sexual and physical abuse; his history of mental illness; his marriage as a teenager to Mr. Lucero, who is 14 years older than Mr. Farley; and the physical and emotional abuse of Mr. Farley by Mr. Lucero, who was also convicted and appears to have been the "driving force" behind the charged crimes.  The government also relied on these mitigating factors—along with Mr. Farley's youth, cooperation with authorities, and lack of similar criminal history—to advocate for a sentence of 40 years, at the high end of the stipulated range.[2]

After hearing the parties' arguments, statements from Mr. Farley's family, and victim impact statements, the district court said it would reject the plea agreement's stipulated sentence because even a sentence of 40 years did not "respect each of the victims . . . in the context of the [15-year] minimum mandatory sentences that are prescribed for the conduct at issue."  ROA Vol. III at 80.  Defense counsel, the government, and the judge then discussed the plea agreement further in the judge's chambers.  The court indicated its initial intentions to impose a sentence of 60 years total (720 months), still a downward variance from the PSR recommendation.  The hearing reconvened and Mr. Farley indicated that he would proceed with sentencing despite the rejection of the plea agreement.  He spoke in allocution and expressed remorse.  The

---

[2] To reach the 40-year sentence stipulated in the plea agreement, the government had proposed 20-year sentences for each count, running the sentences for two of the counts concurrently and then running the third count consecutively.

district court then ultimately set the sentence at 630 months' imprisonment, providing the

following explanation:

> I will reject the plea agreement, viewing that the offense conduct involves three separate victims, and while the conduct was charged in one indictment, the statutory minimum associated with the offense conduct should be respected. While it does not bind the Court because there's an opportunity to run sentences in a [partially concurrent] fashion as explained by the Government, the Court still feels subject to the spirit of the congressional statutes. . . .
>
> I think it is important to state that for each of the defendants involved in the conduct charged in this docket, I have sentenced consistent with the guidelines, and in this case I will vary, so that is an unusual step to take for conduct that I think we all understand and appreciate is not only -- only not acceptable but reprehensible. The severity of the offense conduct has been a factor in this case that has been difficult for me to get past.
>
> But in moving past that, I do recognize that there are mitigating circumstances present in this case as argued by your attorney. I also understand that you came into a very troubled relationship with an individual who took advantage of some vulnerability present, and that has significantly hurt you and others.
>
> So in terms of the appropriate disposition in this case, you'll vary downward six levels to a sentence that still is a very lengthy sentence. And I do that still recognizing your worth and value, but, again, it is important to me to respect the culpability here involving your own conduct in the crime, and I will sentence accordingly.
>
> Pursuant to the Sentencing Reform Act of 1984, and considering those factors set forth in 18 USC Section 3553(a), it is the judgment and sentence of the Court that the defendant Connor William Biggs Farley is hereby sentenced to a term of 210 months per count -- One, Two and Five -- to be served consecutively in the Bureau of Prisons.

ROA Vol. III at 91–94 (emphasis added). Mr. Farley now appeals that sentence.

## II.    STANDARD OF REVIEW

When reviewing criminal sentences, we apply a standard of "reasonableness," which involves "both substantial and procedural components." United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007).  Mr. Farley asserts both procedural and substantive unreasonableness, though we reach only his procedural unreasonableness claims.  "A sentence cannot . . . be considered reasonable if the manner in which it was determined was unreasonable." United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). Procedural unreasonableness most often involves "an improper determination of the applicable Guidelines range," id., but in general, "a district court commits procedural error when it misunderstands or misapplies the law." United States v. Gallegos-Garcia, 618 Fed. App'x 402, 405 (10th Cir. 2015) (unpublished).

Mr. Farley failed to raise his claims below, and so he must show that the district court plainly erred in imposing the sentence in order to justify reversal.  He must demonstrate that "(1) an error occurred; (2) the error was plain; (3) the error affected . . . substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." United States v. Wolfname, 835 F.3d 1214, 1217 (10th Cir. 2016) (internal quotations omitted).

## III.    DISCUSSION

Mr. Farley alleges two plain errors in the district court's methodology for determining his sentence.  First, he claims that the district court erroneously interpreted federal law when it stated that it was following the "spirit of the congressional statutes" by applying consecutive sentences.  ROA Vol. III at 91.  Second, he claims that the

district court relied on a misunderstanding of the sentencing guidelines in order to determine the extent to which it would vary downward from the PSR-recommended sentence.  For the reasons discussed herein, we disagree with Mr. Farley's first claim but agree with the second, and so reverse on those grounds alone.

## A.  District Court's Statutory Interpretation

The district court stated that it was "subject to the spirit of the congressional statutes" in order to explain its decision to run the sentences of 210 months per count consecutively, rather than concurrently.  Id.  Mr. Farley construes this statement to mean that the district court "believed that it needed to sentence Mr. Farley to at least 45 years—i.e., to impose consecutive 15-year sentences for each of the three counts—in order to" respect the 15-year statutory mandatory minimum attached to 18 U.S.C. § 2251 charges and to follow 18 U.S.C. § 3584, which governs the imposition of multiple sentences.[3] Aplt. Br. at 21.  Mr. Farley then claims that this belief constituted plain error because no congressional statute mandates a consecutive sentence for Mr. Farley's offenses, and § 3584 is written so that concurrent sentences are the default when a court imposes multiple terms of imprisonment at one time, as was the case here.  Id.

---

[3] In relevant part, 18 U.S.C. § 3584 states: !

> If multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt.  Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively.

Mr. Farley's characterization of the district court's statement about the "spirit of the congressional statutes" as plainly erroneous fails for several reasons. First, § 3584 explicitly empowers a sentencing court to order consecutive sentences instead of concurrent sentences, without imposing any limits on when the court can do so. 18 U.S.C. § 3584. Thus, the district court's order here did not reflect any misunderstanding about the scope of its authority under § 3584.

Second, it is not clear what "statutes" the district court was actually referring to. Given that the district court mentioned the statutory minimum in the sentence immediately prior to the challenged statement about the "spirit" of the statutes, the court was most likely referring to the statute under which Mr. Farley was convicted, 18 U.S.C. § 2251, which imposes a 15-year mandatory minimum. If § 2251 was indeed the statute the district court had in mind, the court did not err by suggesting that the "spirit" of the statute supported sentencing Mr. Farley to at least 15 years per § 2251 count to be served consecutively, especially because the court acknowledged that although it was not bound by the single-count minimum when imposing a cumulative sentence, it nonetheless felt that the single-count minimum "should be respected." ROA Vol. III at 91.

The government also suggests that the district court may have been referencing 18 U.S.C. § 3553, which among other things requires sentencing courts to consider the federal sentencing guidelines. The guidelines instruct district courts to run sentences consecutively "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment . . . to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). That instruction

to run the sentences consecutively would apply to Mr. Farley,[4] because his offense level corresponded to a life sentence but the statutory maximum under § 2251 limited his sentence for each count to 30 years.  Thus, if § 3553 and its cross-reference to the guidelines were one of the "congressional statutes" the district court was referring to, there could be no error in the district court's finding that those authorities counseled consecutive sentencing here.

And, in any event, the district court's decision to run Mr. Farley's terms of imprisonment consecutively was not directly based on its interpretation of any of the above federal statutes.  We read the district court's explanation to indicate that it believed consecutive sentences for each of the three charges were appropriate not because Congress said so, but because the court wanted to give full respect to each of the three victims involved in the respective counts.  This judgment is reasonable and falls within the district court's sentencing discretion.  Accordingly, we find no error in the district court's reasoning for running Mr. Farley's sentences consecutively.

## B.  District Court's Application of the Guidelines

Separately, Mr. Farley claims that the district court plainly erred by using an unreasonable method to determine the sentence that it would apply to each count under the guidelines.  In particular, Mr. Farley highlights the district court's erroneous

---

[4] The guidelines would not <u>mandate</u> that the district court run the sentences consecutively, however.  <u>See</u> <u>United States v. Lymon</u>, 905 F.3d 1149, 1153 (10th Cir. 2018).  But Mr. Farley does not contend, nor is there evidence to suggest, that the district court believed it had no choice but to impose a consecutive sentence under U.S.S.G. § 5G1.2.

statements about how much it would have to vary from the PSR's 1080-month sentence in order to impose the 40-year (480-month) sentence recommended by the prosecution. Early in the sentencing hearing, the district court expressed concern that the proposed 40-year sentence "would require the Court to depart ten levels" from the PSR recommendation. ROA Vol. III at 63.[5] Then in explaining its final decision at the end of the hearing, the court said it had decided to "vary downward six levels" from the PSR sentence to impose the 210-month-per-count sentence for a total of 630 months' imprisonment. Id. at 93.

But the district court did not have to vary ten levels or nine levels or six levels to impose the requested 40-year sentence. It would have had to vary downward only one offense level, from 43 to 42,[6] which corresponds to a sentencing range of 360 months (30

---

[5] The district court later revised its estimate of the downward variance to nine levels by using 42 as the offense level starting point instead of 43, which was the offense level calculated by the PSR. It appears that the district court used 42 as the starting point because it was already barred from giving Mr. Farley the life sentence that corresponded to his offense level of 43 due to the mandatory maximums, and any sentence less than life would correspond with a lower offense level on the table. But the variance from 43 to 42 should have been included in any tally of how many levels the district court ultimately varied downward, even if the variance from 43 to 42 was made for a different reason than any additional variance. That said, Mr. Farley maintains the same arguments "[r]egardless of whether the proper starting point is level 43 or level 42," Aplt. Br. at 13, n. 4, and so we will not focus on the 43/42 distinction in our analysis of the district court's methodology.

[6] The starting point is 43 because that is the highest offense level contemplated by the sentencing table. For accuracy, however, we note that the various enhancements applied to Mr. Farley's offense level by the PSR actually led to an off-the-chart offense level of 49. Regardless, the district court did not indicate that it was accounting for the 49 offense level when trying to ascertain how many offense levels it was varying, nor does any party contend that it did. We thus proceed based only on the offense levels that appear on the sentencing table.

years) to life on the guidelines table when paired with Mr. Farley's criminal history

category of II.  U.S.S.G. § 5A.  In contrast, an offense level of 43 corresponds only to a

life sentence.  Id.  The sentencing table is designed to produce a "total punishment"—that

is, the "combined length of the sentences," as opposed to a range for each individual

count.  U.S.S.G. § 5G1.2, commentary; see also U.S.S.G § 3D1.5.  Thus, relying solely

on the guidelines table, the court could have imposed a 40-year sentence by varying

down only one level and running 40-year sentences on each count concurrently.

Likewise, the ultimate cumulative sentence of 630 months required a downward variance

of only one level, as it falls within the range of 360 months to life.  Id.  The district

court's statement that it had to vary down six levels to impose its chosen sentence and

that it would have had to vary even more levels to impose the 40-year sentence was

therefore an error—and a plain one at that, because it is unambiguously contradicted by

the guidelines table.  See United States v. Brown, 316 F.3d 1151, 1158 (10th Cir. 2003)

("An error is plain if it is clear or obvious under current law." (internal quotations

omitted)).

The government comes up with a formula by which the district court could have

applied a six-level variance without relying on a plainly erroneous view of the guidelines,

but this too is flawed.  According to the government, the court could have been doing

something much more complicated than simply reducing the overall offense level: it

could have looked at each count individually, then applied a "six level variance per

11

count" to reduce the offense level from 42 to 36,[7] which "yielded a range of 210-262 . . .

arriv[ing] at a final sentence of 630 months by treating those consecutively."  Aple. Br. at

16 (emphasis in original).  But that approach would have been error as well.  The

sentencing table is not designed for that purpose.  The guidelines determine an offense

level and corresponding sentencing range "based on the defendant's overall conduct,

even if there are multiple counts of conviction." U.S.S.G. § 1B1.11, background note.

See also U.S.S.G. § 3D, introductory commentary (providing "rules for determining a

single offense level that encompasses all the counts of which the defendant is

convicted").[8]  The table results in a recommended total punishment; the question of

whether that punishment runs concurrently or consecutively in cases with multiple counts

of conviction is based on a different set of guidelines provisions.  See U.S.S.G. § 5G1.2.

Consequently, that approach would not have been proper under the guidelines either.[9]

---

[7] We again note that the appropriate starting point would have been the PSR offense
level of 43, not 42.  See supra note 5.

[8] Mr. Farley's own PSR exemplifies this standard functioning of the guidelines.  It
calculated an offense level for each of Mr. Farley's respective counts—42 for Count
One, 44 for Count Two, and 40 for Count Five—based on the characteristics of each
specific offense, such as the victim's age and the victim's relationship to Mr. Farley.
The PSR then determined a combined adjusted offense level "by taking the offense
level applicable to the Group with the highest offense level and increasing the
offense level by the amount indicted in the table at U.S.S.G. § 3D1.4."  ROA Vol. II
at 39.  This calculation, plus an enhancement under U.S.S.G. § 4B1.5(b)(1) and
decreases for acceptance of responsibility and cooperation, led to an offense level of
49, which had to be treated as 43 (the highest possible offense level under U.S.S.G. §
5GA).  Thus, the 43 offense level encompassed the underlying conduct of all three
counts.

[9] The government asserts that this approach, while unorthodox, was reasonable partly
because it was "tethered to the Guidelines."  United States v. Bishop, 469 F.3d 896,
907 (10th Cir. 2006), abrogated on other grounds by Gall v. United States, 552 U.S.

Given plain error, Mr. Farley must still demonstrate that the district court's misunderstanding about the offense level variance affected his substantial rights. Wolfname, 835 F.3d at 1217. An error affects substantial rights if there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Molina-Martinez v. United States, 136 S. Ct. 1388, 1339 (2016) (internal quotation marks omitted). We find that condition met here. From the district court's explanation, we glean only three parameters that it used to find a sentence it was comfortable with: (1) it wanted to vary downward at least some degree from the PSR-recommended 1080 months' sentence due to Mr. Farley's mitigating factors, (2) it wanted to run the sentences consecutively so as to respect each individual victim and the seriousness of the offenses, and (3) it did not want to vary down more than six offense levels (or really, seven offense levels, if using 43 as the starting point).

This third parameter resulted from district court's plain error in interpreting the extent of its variance and applying the sentencing table. Because one of the district court's three key considerations was predicated on an error, we find that the error was integral in the district court's reasoning and acted as a limiting factor in how low it was willing to go with Mr. Farley's sentence. Thus, a reasonable probability exists that the district court would have opted for a sentence below 630 months, had it used a reasonable methodology to determine the variance, and the third requirement of plain-error review is met. We simply cannot guess what sentence the district court may have imposed had it

---

38 (2007). But linking the sentence to the guidelines is not probative of procedural reasonableness if the link distorts the way the guidelines actually work.

used a correct analysis; we will allow the court to tell us itself.

The final question is whether the procedural unreasonableness of Mr. Farley's sentence seriously affects the fairness, integrity, or public reputation of judicial proceedings. Wolfname, 835 F.3d at 1217. A court's excusal of "obvious errors . . . that threaten to require individuals to linger longer in federal prison than the law demands" is likely to diminish the public's "view of the judicial process and its integrity." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1908 (2018) (quoting United States v. Sabillon–Umana, 772 F.3d 1328, 1333–1334 (10th Cir. 2014)). Plain errors in the calculation of a defendant's sentencing guidelines range generally merit relief under plain-error review. Id. at 1907. While the district court here did not err in calculating the initial guidelines range, its errors derived from a misunderstanding of the guidelines' proper application in these particular circumstances. The errors were then deeply embedded in the sentence Mr. Farley ultimately received. Letting those errors stand uncorrected, when Mr. Farley has a reasonably likely chance at a lower sentence if a proper method were used to determine the extent of the downward variance, would surely diminish the fairness and integrity of these proceedings. Thus, we find each prong of the plain-error test met and must reverse Mr. Farley's sentence.

## IV.     CONCLUSION

Based on the foregoing, we REVERSE and REMAND for resentencing due to the unreasonableness of the district court's methodology in determining the extent of Mr.

Farley's variance.[10]

---

[10] We do not reach Mr. Farley's alternative claim of substantive unreasonableness.